Christopher J. DITULLIO, Plaintiff,

v.

**VILLAGE OF MASSENA, Defendant.**

No. 98–CV–0651.

United States District Court,
N.D. New York.

Jan. 26, 2000.

Hancock & Estabrook Law Firm, Syracuse, NY, for plaintiff; Michael J. Sciotti, of counsel.

Saperston & Day Law Firm, Syracuse, NY, for defendant; Diane M. Martin–Grande, of counsel.

### MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Christopher Ditullio, a police officer with the Village of Massena Police Department, commenced the instant litigation against Defendant Village of Massena ("Massena") claiming violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq. ("ADA"), and N.Y.Exec. Law § 290, et. seq. (the "Human Rights Law" or "HRL"). Plaintiff alleges that Massena has failed to permit him to return to road patrol after sustaining an injury to his right eye in violation of the ADA and HRL and has retaliated against him for exercising his rights under those statutes.

Presently before the Court is Defendant's motion pursuant to FED.R.CIV.P. 56 seeking dismissal of the Amended Complaint in its entirety and Plaintiff's cross-motion for partial summary judgment and an Order striking those portions of Defendant's Attorneys affidavit consisting of legal argument and facts not based on personal knowledge.

## I. BACKGROUND

At all times relevant hereto, Plaintiff was and is a police officer with the Village of Massena Police Department. On July 13, 1995, while driving to work, Plaintiff was involved in a car accident where his face went through the windshield of his car. The cause of the accident was believed to be a sudden drop in blood pressure resulting from a heart condition from which Plaintiff has suffered since he was a teenager. As a result of the accident, Plaintiff sustained various injuries, including a severe laceration to his right eye.

Plaintiff was taken to Fletcher Allen Health Care Facility in Burlington, Vermont where he was a patient until August 1, 1995. While at Fletcher, Plaintiff underwent a medical procedure to correct his existing heart condition. Plaintiff's cardiologist cleared Plaintiff for return to work with respect to his heart condition. The injury to his eye, however, required continued treatment.

Plaintiff returned to work on limited desk duty in or about November 1995. At that time, Plaintiff wore a patch over his eye and was concerned about his ability to perform the duties of a patrol officer. In fact, by letter dated November 17, 1995, Dr. Bruce Smith ("Dr.Smith"), one of Plaintiff's treating physicians, wrote that:

At present [Plaintiff] is functionally blind in the right eye.

It is my opinion that this should prohibit him from handling a firearm in the line of duty, and driving a vehicle in line of duty.... [D]epending on the result of [a potential corneal transplant], [he] could

recover enough to be able to resume full duties and responsibilities.

Def.Ex. H. At that time, Plaintiff agreed to perform light duty, desk work.

In or about January 1996, Plaintiff approached Chief of Police Timmy J. Currier ("Currier") and requested to be returned to road patrol. Shortly thereafter, on January 24, 1996, Dr. Smith wrote a prescription for Plaintiff stating:

Vision recovered sufficiently to return to regular duty. Peripheral vision normal. Can drive without limitation. He should requalify with pistol before using it.

Def.Ex. I. Plaintiff provided the January 24, 1996 prescription to Currier. Plaintiff discussed with Currier the need to requalify with the pistol and the two agreed that Plaintiff would wait to requalify with the rest of the department.

By letter dated February 14, 1996, Dr. James D. Watson ("Dr.Watson"), another of Plaintiff's treating physicians, wrote that:

The vision in [Plaintiff's] right eye is limited to 20/70.... The cornea has significant scar.... There was early cataractous lens change, but this has not worsened since his last exam.

[Plaintiff] would benefit from avoiding any activity which would result in the possibility of eye contact. He may use his eyes for visual needs, but should avoid any possible reinjury at this time.

Def.Ex. I.

In May 1996, Plaintiff requalified with his service weapon on the firing range and, thus, again requested to return to road patrol. In response to Plaintiff's request, Currier requested additional medical information regarding the condition of his eye.

On May 14, 1996, Dr. Thomas J. Cavin ("Dr.Cavin"), another of Plaintiff's treating physicians for his eye, wrote that Plaintiff's "vision without correction is $20/60$ [in his] right eye.... He will require a corneal transplant operation, possible combined with iris surgery. He may require eyelid surgery as well.... I would expect

that the earliest that his vision would be rehabilitated in the right eye would be six months or so from now." Later, on July 2, 1996, Dr. Cavin wrote that Plaintiff's vision:

is limited to the 20/60 range right eye.... Because of the injuries in the right eye there is some decreased visual function. Depth perception is not as perfect ... though his overall visual function is very close to normal because of his better than normal vision in the left eye.

It is reasonable to say that [Plaintiff] would have essentially normal overall visual function since his vision in the left eye is normal.... Since there are so many other factors contributing to safety while driving and performing as a police officer, his vision should be adequate to perform his duties with essentially the same safety as someone with normal vision in both eyes.

Def.Ex. L. In September 1996, Dr. Cavin wrote that Plaintiff's uncorrected vision in his right eye was 20/60 and that because his eye "is comfortable and [he has] such excellent vision in the left eye," the decision to undergo surgery was deferred. Dr. Cavin opined that Plaintiff utilize "polycarbonate safety glasses to provide protection, and being active should not significantly threaten the health of [his] right eye. Therefore being an active officer would be reasonable." Def.Ex. M. Dr. Cavin further opined at deposition that Plaintiff continues to suffer from photophobia, poor vision in his right eye, a cataract, and loss of iris. *See* Aug. 30, 1999 Cavin Dep. at 59.

In October 1996, Massena requested that Plaintiff sign medical releases authorizing access to his medical records and the workers compensation file. Plaintiff refused. According to Massena, "[b]ecause of the inconsistencies and problems from the medical information that we were being provided by [Plaintiff] and by his physicians[,][t]he village wanted to look further at the documentation that they had on [Plaintiff's] condition." May 18, 1999

Currier Dep. at 305. When Plaintiff refused to permit access to his medical records, on January 14, 1997, Massena served him with a Demand for Medical Examination (the "Demand") pursuant to N.Y.Civ. Serv.Law § 72. According to the Demand, Massena believed that Plaintiff was "unable to perform the duties of his position of police officer by reason of a disability, other than a disability resulting from occupation injury or disease as defined in the Workers' Compensation Law." Pl.Ex. 17. The Demand specifically questioned whether, among other things, Plaintiff could meet the minimum standards for visual acuity and depth perception established by the State of New York. *See id.*

Dr. Carl Hanig ("Dr. Hanig") performed the medical evaluation pursuant to N.Y.Civ.Serv.Law § 72. Dr. Hanig examined Plaintiff on two separate occasions. In his March 12, 1997 report, Dr. Hanig found plaintiff to be nearly 100% impaired in his right eye, having a corrected vision of 20/100–1. *See* Def.Ex. N. According to Dr. Hanig, Plaintiff's "poor vision in the right eye is due to a combination of corneal scarring and cataract." *Id.* Dr. Hanig opined that "[t]he markedly impaired vision in his right eye would, in my mind, certainly make a return to active police duty extremely hazardous." *Id.* Dr. Hanig concluded that "I would think that his light duty restrictions would have to be considered permanent in this field of work," and that his problems due to the cornea, the cataract, and loss of the part of the iris "would make return to duty as a police officer extremely difficult, even should the surgery lead to a good rehabilitation of his vision in his right eye." *Id.* Finally, Dr. Hanig expressed his disagreement with Dr. Cavin's statement that Plaintiff would have essentially normal overall visual function. Dr. Hanig believed it important for a police officer "to meet a certain set of guidelines for each eye separately, rather than the two eyes together." *Id.*

On June 10, 1999, Dr. Hanig again examined Plaintiff. In his medical report, Dr. Hanig wrote as follows:

On examination today, his corrected vision in the right eye is 20/100. Findings on his eyelids, cornea, lens, iris, and retina are unchanged from my previous evaluation. Ocular tensions today measured 15 mm in both eyes. Other tests done today that had not been done previously, include color testing, which showed him to have totally normal color perception in each eye, tested separately; testing of stereopsis (depth perception) showed him able to only perceive up to 400 seconds of arc, which is well below the normal of 40 seconds, and also less than the 80 seconds considered sufficient by the police officer candidate's manual that I was given to review; Humphrey visual field testing, which showed an essentially normal peripheral vision test in the right eye; potential acuity meter testing the right eye, which indicated that he has the potential to improve to at least 20/40 in his right eye, were he to have successful surgery on his combination of corneal and lens disease; keratometry, a measure of the curvature and indication of the scarring of the surface of the right cornea, which showed marked irregularity and astigmatism of the right cornea, and probably accounts for most of the visual blurring that he has.

Def.Ex. O. Dr. Hanig further opined that:

In reviewing the essential functions and tasks, I would first be concerned about the use of a gas mask which might further impair his already compromised vision; the use of chemical agents, which might compromise his vision in his better eye, leaving him with only a legally blind eye to function with; the risk to either of his eyes in the active controlling hostile groups; the operation of a vehicle in all of the conditions and situations listed, in that both his acuity and his depth perception are already compromised, and a difficult situation might create further risk to himself or the people around him; and the use of physical force in breaking up fights, subduing other persons, and disarming a suspect, in that these acts would put him at increased risk of injury to himself.

*Id.*

At deposition, Plaintiff described the extent of the injuries to his eye. Plaintiff stated that he experiences "minor problems with depth perception" and sensitivity to bright sunlight, but that he experiences no problems with his peripheral vision or driving a car, and that the problems with his eye have not totally prevented him from engaging in any of his daily life activities or performing the essential functions of his job. *See* Def. Ex. F at 35–38; 225–227. During this time, Currier refused to permit Plaintiff to return to road patrol.

On January 2, 1997, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA and HRL. After investigation and attempts at conciliation, the EEOC issued Plaintiff a right to sue letter. Plaintiff then commenced the instant action alleging disability discrimination and retaliation in violation of the ADA and the HRL.

Presently before the Court are: (1) Defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 seeking dismissal of the Complaint in its entirety; and (2) Plaintiff's cross-motion for partial summary judgment and an Order striking certain portions of Defendant's attorney's affidavit.

## II. DISCUSSION

### A. Summary Judgment Standard

The standard for summary judgment in employment discrimination cases is well-settled and need not be restated here. This Court has set forth the appropriate standard to be applied in numerous published decisions, see *Roman v. Cornell Univ.*, 53 F.Supp.2d 223, 232–33 (N.D.N.Y.

1999); *Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551 (N.D.N.Y. June 24, 1999); *Riley v. Town of Bethlehem,* 44 F.Supp.2d 451, 458 (N.D.N.Y.1999), and will apply the same standard discussed in those cases to the pending motion and cross-motion for summary judgment.

█ To the extent that Defendant's Attorney's affidavit contains factual assertions not made upon personal knowledge and/or legal arguments, such portions of her affidavit will be stricken and not considered by the Court in connection with the pending motions. *See Hollander v. American Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir.), *cert. denied,* — U.S. —, 120 S.Ct. 399, 145 L.Ed.2d 311 (1999); N.D.N.Y.L.R. 7.1(a)(2).

## B. Discrimination on Account of Disability Under the ADA

To establish a prima facie case of discrimination under the ADA, Plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. *See Heyman v. Queens Village Comm. for Mental Health for Jamaica Community Adolescent,* 198 F.3d 68, 71 (2d Cir. 1999).

### 1. Whether Defendant is Subject to the ADA

Defendant concedes for purposes of the instant motion that it is subject to the ADA thereby satisfying the first prong of the *prima facie* case.

### 2. Whether Plaintiff is Disabled within the Meaning of the ADA

The next question is whether Plaintiff is disabled as that term is defined by the ADA. There are three ways in which Plaintiff can be considered disabled within the ADA. He could: (1) have a physical or mental impairment that substantially limits one of more of the major life activities of such individual; (2) have a record of such an impairment; or (3) be regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); *see also Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2144, 144 L.Ed.2d 450 (1999). In the instant action, Plaintiff claims that he falls within the first and third definitions set forth above.

### a. Whether Plaintiff Has a Physical Impairment That Substantially Limits One or More of the Major Life Activities

Plaintiff contends that the injury sustained to his eye constitutes a physical impairment that substantially limits the major life activities of seeing and working. In support, Plaintiff argues that the injury to his right eye substantially limits his ability to see because the injury is permanent, the right eye is almost 100% impaired, he has an impairment of his overall visual system of 25%, he has a 14% total loss of the use of his entire body because of his visual problems, he suffers from light sensitivity, his vision is cloudy when he uses his right eye alone, and he has some depth perception problems. Plaintiff also argues that he is precluded from performing a broad range of jobs in various classes and, thus, is substantially limited in his ability to work.

Defendant counters that Plaintiff's impairment has not prevented or limited him from engaging in any of his usual daily activities of life such as driving, caring for himself, working, etc., and, thus, cannot rise to the level of substantial. Defendants also maintain that Plaintiff is able to perform various jobs and, accordingly, is not substantially limited in his ability to work.

### (1) Whether Plaintiff is Substantially Limited in His Ability to See

█ Plaintiff clearly suffers from a physical impairment to his right eye. *See, e.g., Albertsons, Inc. v. Kirkingburg,* 527

U.S. 555, 119 S.Ct. 2162, 2167, 144 L.Ed.2d 518 (1999). He sustained a laceration leaving his right eye virtually blind, with a corrected vision in that eye of about 20/100–1. Dr. Hanig wrote that Plaintiff "is nearly 100% impaired in the right eye." Def.Ex. N. It also is unquestionable that the physical impairment to the right eye impacts the major life activity of seeing. *See* 29 C.F.R. § 1630.2(i); *Albertsons,* 119 S.Ct. at 2167; *Colwell v. Suffolk County Police Dept.,* 158 F.3d 635, 642 (2d Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999). Although Plaintiff suffers from an impairment to his right eye, the central inquiry is whether Plaintiff's physical impairment *substantially* limits the major life activity of seeing.

Pursuant to EEOC regulations, the term "substantially limits" means:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). In determining whether an individual is substantially limited in a major life activity, the regulations suggest consideration of the following factors:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

■ Plaintiff does not qualify under the definition set forth at 29 C.F.R. § 1630.2(j)(1)(i) because he is able to per-

form the major life activities that the average person in the general population can perform. *See, e.g.,* Pl.Rule 7.1(a)(3) stmnt., ¶ 39 ("[P]laintiff's eye injury does not totally prevent him from performing activities in his daily life."). In fact, the evidence reveals that Plaintiff's overall vision is 20/20, although he suffers from a 15% impairment in his total visual system. Because Plaintiff can see, he is not "unable to perform a major life activity that an average person in the general population can perform." 29 C.F.R. § 1630.2(j)(1)(i).

■ The Court must next consider whether Plaintiff is substantially restricted as to the condition, manner, or duration under which he can see as compared to the average person in the population. *See* 29 C.F.R. § 1630.2(j)(1)(ii). It is undisputed that Plaintiff's injury is permanent. The question is the extent of the severity of the injury. The evidence submitted in connection with the instant motions demonstrate that:

- Plaintiff's vision has "recovered sufficiently to return to regular duty," Def. Ex. I;
- his "peripheral vision [is] normal," *id.;*
- he has excellent vision in his left eye, *see* Def.Ex. L;
- his "overall . . . visual function is very close to normal because of his better than normal vision in the left eye," *id.;*
- he is "expect[ed] . . . to see 20/20 using both eyes," Def.Ex. R at p. 27;
- "his vision should be adequate to perform his duties with essentially the same safety as someone with normal vision in both eyes," Def.Ex. L;
- he has a total decrease in his visual system somewhere between 15% and 25%, *see* Def.Ex. R at p. 41, *see* Def. Ex. N;
- as a result of the eye injury he suffers a total loss of use of the body of 14 percent, *see* Def.Ex. R. at p. 41;
- his depth perception is well below the normal range, *see* Def.Ex. O;

- he experiences sensitivity to bright sunlight or lights being shined directly in his eyes, although "[g]lare does not seem to be a significant problem", *see* Def.Ex. F at p. 38, Def.Ex. M;
- "his level of function seems to be at a quite high level," Def.Ex. R at p. 36; and
- he experiences minor difficulties with judging distances, *see* Def.Ex. F at p. 36.

Plaintiff testified at deposition that his impairment does not totally prevent him from performing any daily life activity, *see* Def.Ex. F at p. 225, and, while it makes certain activities difficult, such as parking his car, following a hit golf ball, or playing catch with his children, he is not precluded from engaging in these activities to any significant degree. *See* Def.Ex. F. at pp. 36–37, 226. Plaintiff further testified that he has adjusted to some of his vision problems. *See* Def.Ex. F. at p. 36.

■ In determining whether Plaintiff is substantially limited in the major life activity of seeing, the Court is not to look at mathematical averages or numerical categorizations to find whether a particular impairment constitutes a *per se* disability, but to make an individualized inquiry. *See Sutton,* 119 S.Ct. at 2147; *see generally,* 29 C.F.R. pt. 1630, App. § 1630.2(j). Furthermore, the Court must consider "measures that mitigate the individual's impairment." *Sutton,* 119 S.Ct. at 2143.

Upon reviewing the totality of the evidence submitted, the Court finds that no rational finder of fact could reasonably conclude that Plaintiff's vision is substantially limited as compared to the average person in the population. Because Plaintiff's left eye functions normally, his overall visual system is good. *See, e.g., Still v. Freeport–McMoran, Inc.,* 120 F.3d 50 (5th Cir.1997). Although Plaintiff does suffer from what appears to be a significant deficit in his depth perception abilities, there is no evidence indicating that his total visual system is substantially restricted as compared to the average person in the

population. In fact, the medical records of Plaintiff's own physician indicate that his overall vision is very close to normal. *See* Def.Ex. L. Furthermore, as noted, Plaintiff stated at deposition that, despite his depth perception problems, the injuries to his right eye cause him little difficulty in performing normal daily activities including driving or working. *See* Def.Ex. F at pp. 36–37, 225–26. In fact, Plaintiff performed quite well in his efforts to requalify with his service pistol, scoring well above the required score of 85% proficiency, despite the injury to his eye. *See* Pl.Exs. 41, 42. The evidence in its totality demonstrates that Plaintiff's impairment was not substantially limited and no rational jury could reasonably conclude otherwise.

A review of the case law supports the conclusion that, under the facts of this case, Plaintiff is not substantially limited in his ability to see. In *Still,* the Fifth Circuit found that the plaintiff who was blind in one eye was not substantially limited in the major life activity of seeing because his remaining eye functioned normally and he was able to perform his normal daily activities despite a limitation in his peripheral vision caused by his partial blindness. *See Still,* 120 F.3d at 52. Other cases have similarly held that a plaintiff with vision problems does not suffer from a substantially limiting impairment if he or she is still able to perform most daily activities without much difficulty. *See Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *Bancale v. Cox Lumber Co., Inc.,* 1998 WL 469863 (M.D.Fla. May 18, 1998), *aff'd,* 170 F.3d 188 (11th Cir.1999); *Sweet v. Electronic Data Sys., Inc.,* 1996 WL 204471, at *5 (S.D.N.Y. Apr.26, 1996); *Cline v. Fort Howard Corp.,* 963 F.Supp. 1075, 1080 (E.D.Okl.1997) (and cases cited therein); *see also Testerman v. Chrysler Corp.,* 1997 WL 820934, at *4 (D.Del. Dec. 30, 1997) ("The simple fact is that an individual with corrected vision does not suffer from an

impairment which substantially limits a major life activity.").

There is, however, a line of cases that would tend to support Plaintiff's claim that he is substantially limited in his ability to see. For example, in *Doane v. City of Omaha*, 115 F.3d 624 (8th Cir.1997), *cert. denied*, 522 U.S. 1048, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998), the Eighth Circuit held that blindness on one eye causing a 25% disability of the visual system and a 25% whole body impairment constituted a disability within the meaning of the ADA. *Doane* and its progeny are of limited persuasiveness, however, because they failed to consider the effects of mitigating circumstances including the plaintiff's corrected vision and the brain's ability to adapt and otherwise mitigate the effect of the impairment. *See Doane*, 115 F.3d at 627–28 ("Doane's brain has mitigated the effects of his impairment, but our analysis of whether he is disabled does not include consideration of mitigating measures. His personal, subconscious adjustments to the impairment do not take him outside of the protective provisions of the ADA."). This, of course, is contrary to the teachings in *Sutton*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450, *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), and *Albertsons*, 119 S.Ct. at 2168. In *Albertsons*, the Supreme Court expressly stated that:

> [T]he [court below] appeared to suggest that in gauging whether a monocular individual has a disability a court need not take account of the individual's ability to compensate for the impairment.... But in treating monocularity as itself sufficient to establish disability and in embracing *Doane*, the [court] adopted the view that whether the individual had learned to compensate for the disability by making subconscious adjustments to the *manner* in which he sensed depth and perceived peripheral

objects was irrelevant to the determination of disability.... We have just held, however, ... that mitigating measures must be taken into account in judging whether an individual possessed a disability. We see no principled basis for distinguishing between measures undertaken with artificial aids, like medications and devices, and measures undertaken, whether consciously or not, with the body's own systems.

119 S.Ct. at 2168–69 (internal quotation and citation omitted) (emphasis in original).

As the court stated in *Bancale*, "Plaintiff's proffer of diagnoses and labels is not sufficient to create a dispute of fact for this issue. Instead, there must be evidence of how these visual impairments affect the activities of his daily life." 1998 WL 469863, at *5. As previously discussed, Plaintiff's own testimony and medical records demonstrates that he was not so limited and, thus, no jury could find that he has an impairment that substantially limits the major life activity of seeing.

**(2) Whether Plaintiff is Substantially Limited in the Major Life Activity of Working**

■ Because Plaintiff has failed to raise a genuine issue of fact whether he is substantially limited in the major life activity of seeing, he may, nonetheless, satisfy this prong of the *prima facie* case by establishing that he is substantially limited in the major life activity of working. *See* 29 C.F.R. pt 1630, app. § 1630.2(j).[1]

Pursuant to EEOC regulations, Plaintiff is substantially limited in the major life activity of working if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a

---

1. In light of *Sutton*, it is questionable whether "working" is a major life activity. 119 S.Ct. at 2139. However, until the Supreme Court definitively rules on that question, this Court is bound by Second Circuit decisions that have held that working is a major life activity. *See Muller v. Costello*, 187 F.3d 298, 312 n. 5 (2d Cir.1999).

single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Relevant factors to consider include those previously discussed *supra* and found at 29 C.F.R. § 1630.2(j)(2) and:

    (A) The geographical area to which the individual has reasonable access;

    (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

    (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii). Succinctly stated, the inquiry is whether Plaintiff's injury precluded him from gaining employment in: (1) a class of jobs requiring similar training, knowledge, skills, or ability as that of a police officer; or (2) a broad range of jobs in various classes not utilizing the same training, knowledge, skills, or abilities of a police officer.

■ Based on the evidence before the Court, no fair-minded trier of fact could reasonably conclude that Plaintiff was precluded from gaining employment in a class or broad range of jobs. Plaintiff is still employed by Defendant as a police officer, albeit not on road patrol. The inability to work as a patrolman pertains to a single, particular job that is insufficient to constitute a substantial limitation in the ability to work. *See Muller*, 187 F.3d at 313; *Miller v. City of Springfield*, 146 F.3d 612, 615 (8th Cir.1998); *Daley v. Koch*, 892

F.2d 212, 215 (2d Cir.1989); 29 C.F.R. § 1630.2(j)(3)(i). Plaintiff points to no other classes of jobs or broad range of jobs that he would be unable to perform because of his impairment. Of course, the fact that Plaintiff continues to be employed as a police officer by Defendant undermines any claim that he is substantially limited in his ability to work.

For the foregoing reasons, the Court finds that no fair minded jury could reasonably conclude that Plaintiff suffers from a physical impairment that substantially limits a major life activity.[2]

### b. Whether Plaintiff Was Regarded as Being Disabled

Plaintiff may fall within the ADA's statutory definition of "disabled" if he was "regarded as" being disabled. In opposing summary judgment, Plaintiff contends that he is disabled within the meaning of the ADA because Defendant considered his heart condition and his eye injury as bases for not returning Plaintiff to active road patrol. *See* Pl.Mem. of Law at 13. Thus phrased, Plaintiff's argument appears to be that Defendant mistakenly believes him to be substantially limited in the major life activity of working. Plaintiff does "not make the obvious argument that [he is] regarded due to [his] impairments as substantially limited in the major life activit[ies] of seeing [or breathing]." *Sutton*, 119 S.Ct. at 2150. Accordingly, the Court's analysis will be limited to whether Defendant regarded Plaintiff as substantially limited in the major life activity of working.

■ To fall within the "regarded as" definition, Plaintiff must proffer evidence from which a fair-minded jury could reasonably infer that "the employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the statute and that the employer discriminated

---

**2.** Plaintiff argues only that he is substantially limited in the major life activities of seeing and working and, thus, the Court need not consider any other major life activities.

against the plaintiff on that basis." *Heyman*, 198 F.3d at 72 (internal quotations and citation omitted). In other words, "[i]t is not enough ... that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." *Colwell*, 158 F.3d at 646. Thus, Plaintiff must proffer evidence from which a fair-minded jury could reasonably conclude that Defendant regarded him as having an impairment that substantially limited a major life activity, which, in this case, Plaintiff claims is the major life activity of working. *See id.*

■ For the reasons that follow, the Court finds that Plaintiff has failed to meet this burden. First, and most significantly, the fact that Defendant continues to employ Plaintiff belies the allegation that Defendant regarded him as substantially limited in his ability to work and, therefore, Plaintiff has failed to proffer evidence from which the trier of fact could reasonably infer that Defendant perceived him as incapable of working in a class of jobs or broad range of jobs suitable for a person of his age, experience, and training because of his heart or eye conditions. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 872 (2d Cir.1998).

Second, assigning Plaintiff to light duty does not support the inference that Defendant perceived Plaintiff as substantially limited in his ability to work. *See Colwell*, 158 F.3d at 647. This is because it is incumbent on Plaintiff to present evidence from which the trier of fact could reasonably infer that Defendant perceived him as unable to perform in a broad range of jobs suitable for his age, training, and experience, and not whether Defendant perceived him as unable to perform in the specific and limited role of a patrolman. *See id.* For the reason set forth above, Plaintiff cannot sustain this burden.

Third, "[e]vidence that [Plaintiff] ... [was] the only [patrolman] ... required to submit to physical examinations provides no basis for concluding that [he][was] regarded as limited substantially. For a long time, [Plaintiff himself admitted] .. that [he] had physical limitations that prevented [his] doing a full range of police work. The fact that the [Village of Massena] perceived a need to require the exams suggests no more than that [his] physical condition was an open question." *See id.* This conclusion is supported by Currier's deposition testimony that he did not return Plaintiff to road patrol because of "contradictions in the medical information." *See* Def.Ex. G2 at 433–34.

Finally, Plaintiff's contention that Defendant considers him disabled because it looked into disability retirement for him does not support the necessary inference. There can be any number of reasons why Defendant was looking into disability retirement and the definition of disability under a particular insurance plan may not be equivalent to the definition of disability under the ADA. For example, some disability policies require only that an individual is precluded from performing in his or her usual occupation as opposed to a broad range of jobs.

For these reasons, the Court finds that Plaintiff has failed to proffer sufficient evidence from which a rational finder of fact could reasonably conclude that he is disabled within the meaning of the ADA and, thus, his First Cause of Action must be dismissed.

## C. Retaliation for Engaging in Protected Activity Under the ADA

■ Plaintiff need not be disabled within the meaning of the ADA to proceed on a theory of retaliation for engaging in protected activity under the ADA. *See Muller*, 187 F.3d at 311. Defendant did not advance any arguments in its initial moving papers regarding Plaintiff's claims of retaliation (the Third and Fourth Causes of Action) and, thus, those Causes of Action will not now be considered by the Court. Defendant may not first raise ar-

guments with respect to those Causes of Action in its reply papers because Plaintiff would not have a fair opportunity to respond.[3] Accordingly, Plaintiff's Third and Fourth Causes of Action survive Defendant's motion for summary judgment.

## D. Disability Discrimination under the HRL

Because Plaintiff's claim for retaliation under the ADA survives Defendant's motion for summary judgment, thereby supplying this Court with subject matter jurisdiction, the Court will, at this stage of the litigation, exercise supplemental jurisdiction over the related state law claims. Defendant's motion to dismiss on this ground, therefore, is denied.

The Court will now turn to Defendant's motion to dismiss Plaintiff's Second Cause of Action for Discrimination on Account of Disability under the HRL. Defendant does not argue that Plaintiff does not suffer from a medically demonstrable physical impairment. Rather, it argues that Plaintiff's physical impairment prevents him from performing his job in a reasonable manner and, thus, he may not succeed on his HRL claim. *See* N.Y.ExEC.LAW § 292(21).

■ The definition of "disability" under the HRL is more liberal than that under the ADA. *See State Div. of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 218, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985). Under N.Y.ExEC.LAW § 292(21):

> The term 'disability' means (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically

accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

There is a genuine issue of fact whether Plaintiff suffers from a medically demonstrable physical impairment within the meaning of § 292(21). The medical evidence indicating nearly 100% disability in Plaintiff's right eye and the significant impairment to his depth perception could fairly be interpreted to constitute a physical impairment demonstrable by medically accepted clinical or laboratory diagnostic techniques. *See Xerox*, 65 N.Y.2d at 218, 491 N.Y.S.2d 106, 480 N.E.2d 695; *see also Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 145 (2d Cir.1998).

■ Thus, the Court must next address whether Plaintiff could have performed his duties as a road patrol officer in a "reasonable manner" had he been permitted to perform in that capacity. *See* N.Y.ExEC.LAW § 292(21); *see also Altman v. New York City Health and Hosp. Corp.*, 100 F.3d 1054, 1061 (2d Cir.1996). The review is individualized and the burden is on Defendant to demonstrate that Plaintiff's impairment prevents him from performing his duties of the job. *See McEniry v. Landi*, 84 N.Y.2d 554, 559, 620 N.Y.S.2d 328, 644 N.E.2d 1019 (1994).

---

**3.** Although Defendant's motion for summary judgment seeks dismissal of the Complaint in its entirety, the papers in support of that motion do not make mention of the retaliation claims. In his opposition/cross-motion papers, Plaintiff pointed out that Defendant failed to make arguments on these issues and, thus, offered no arguments in support of those claims. In its reply/cross-opposition papers, Defendant first argues that the retaliation claims should be dismissed. While Plaintiff could theoretically respond via cross-reply papers (which he did not file), it would not be technically proper because new arguments may not be raised in the first instance in reply papers and Plaintiff's cross-motion did not "open the door," so the speak, to the retaliation claims.

There is significant dispute over the essential functions of the position of road patrol officer and the requisite physical, including visual, requirements. Further, the medical documentation is somewhat contradictory regarding whether Plaintiff can reasonably perform as a road patrol officer. For example, several of Plaintiff's personal physicians, who admittedly did not review any job criteria, opined that Plaintiff could return to work with the minimal restriction of protective glasses. *See* Def.Exs. I, L ("[Plaintiff's] vision should be adequate to perform his duties with essentially the same safety as someone with normal vision in both eyes."); M ("I suggested polycarbonate safety glasses to provide protection, and being active should not significantly threaten the health of your right eye. Therefore being an active officer would be reasonable."); Pl.Ex. 40. One of Plaintiff's physicians, Dr. Bruce T. Smith, did review the standards for municipal police officer candidates contained at 9 N.Y.C.R.R. § 6000.9 and, in an affidavit dated December 15, 1999, stated that "[g]iven my examination of Mr. DiTullio, I believed [he] could perform the essential functions of a road patrol officer as outlined in 9 N.Y.C.R.R. § 6000.90." *See* Dec. 15 Smith Aff., ¶ 8. On the other hand, Defendant's expert opined that it is his:

> opinion that [Plaintiff's] eye injury will impair and/or prevent his ability to safely carry out many of the essential job tasks and functions outlined by the Division of Criminal Justice Services. For example, he will be forced to cross-eye shoot from his left eye, he will have problems distinguishing sufficiently to discharge his firearm at night, he will experience difficulty distinguishing targets when discharging his firearm in emergency situations because he will need to allow time for his functioning eye to focus. Additionally, his lack of peripheral vision will adversely impact his ability to operate a police vehicle in emergency situations ... and he will encounter difficulty in any situation re-

quiring him to survey a wide area, such as a crime scene. Mr. Ditullio suffers from a blind spot which will make it difficult to control situations of civil disobedience, subdue someone resisting arrest or use physical force.

Pl.Ex. 39. However, some of the concerns raised by Defendant's expert seem to have been alleviated by Plaintiff's own ability to adapt to his limitation. For example, despite Defendant's expert's concern about Plaintiff's ability to "cross eye shoot," Plaintiff performed extremely well at his department requalification.

Similarly, Dr. Hanig, who performed the independent medical evaluation, reviewed the standards of the Municipal Police Training Council and opined that he had certain concerns about Plaintiff's ability to perform various tasks as a police officer. *See* Def.Ex. O. However, Dr. Hanig did not make any definitive conclusions whether Plaintiff could reasonably perform as a road patrol officer. *See* Pl.Ex. 61 at p. 46. Furthermore, many of Dr. Hanig's medical conclusions support Plaintiff's ability to reasonably function as a road patrol officer in light of his impairment. *See* Pl.Ex. 61 at pp. 36, 64, 66.

Given the lack of consensus in the medical evidence, the Court finds that there is a material issue of fact whether Plaintiff can reasonably perform the activities or functions of a road patrol officer. Moreover, the fact that Defendant refused to accept the letters from Plaintiff's physicians indicating that he could resume the full duties of a police officer and required him to undergo an independent evaluation despite these letters could support an inference of discrimination on account of his disability. Based on the facts before the Court, reasonable minds could differ whether Plaintiff is medically incapable of meeting the requirements of a road patrol officer due to some cognizable medical condition, *see Delta Air Lines v. New York State Div. of Human Rights,* 91 N.Y.2d 65, 73, 666 N.Y.S.2d 1004, 689 N.E.2d 898 (1997), and

whether the reasons proffered by Defendant for not returning Plaintiff to road patrol were a mask for unlawful discrimination.

For these reasons, Defendant's motion to dismiss the Second Cause of Action alleging discrimination on account of Plaintiff's purported disability in violation of the HRL is denied.

### E. Plaintiff's Cross–Motion for Summary Judgment

Plaintiff cross-moves for summary judgment contending that Defendant violated 42 U.S.C. § 12112(d)(4) as a matter of law by asking him to sign medical releases and requiring him to undergo a physical examination pursuant to N.Y.Civ.Serv.Law § 72. *See* 42 U.S.C. § 12112(d)(4); 29 C.F.R. § 1630.13. Defendant responds that the inquiry was related to Plaintiff's ability to perform job-related functions and, thus, permissible.

■ Section 12112(d)(4) provides that: A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

The statute clearly sets forth the bounds of permissible examinations or inquiries. "[F]or an employer's request for an exam to be upheld, there must be significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job. An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there must be genuine reason to doubt whether that employee can 'perform job-related functions.' " *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir.1999) (quoting 42 U.S.C. § 12112(d)(4)). The regulations similarly provide that an employer "may require a medical examination that is job-related and consistent with business necessity." 29 C.F.R. § 1630.14(c). Medical examina-

tions "must be restricted to discovering whether the employee can continue to fulfill the essential functions of the job." *Sullivan*, 197 F.3d at 811; 29 C.F.R. Pt. 1630, App. § 1630.14(c).

■ The evidence before the Court demonstrates that Defendant requested access to Plaintiff's medical records to ensure that he would be able to safely return to work as a patrolman after having suffered a severe injury to his eye and to resolve what it believed to be some discrepancies in the medical information Plaintiff had provided. *See* Def.Ex. G1 at p. 175–76. Because Plaintiff refused to execute the medical releases, Defendant concluded that it would need to send him for a section 72 independent medical examination so it could obtain a medical evaluation, clear up some of what it perceived to be discrepancies in the medical records, and determine whether Plaintiff was able to safely return to the road patrol despite his eye injury. *See id.* Defendant only requested such information after Plaintiff requested to return to the road patrol.

Because a rational finder of fact could reasonably conclude from these facts that Defendant's inquiry and request for a medical examination were related to Plaintiff's ability to safely perform as a patrolman in light of his eye injury, Plaintiff's cross-motion for summary judgment is denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED IN PART insofar as Plaintiff's First Cause of Action alleging discrimination on account of disability in violation of the ADA is DISMISSED. In all other respects, Defendant's motion for summary judgment is DENIED. Plaintiff's cross-motion for summary judgment also is DENIED.

**IT IS SO ORDERED**