**William SHERMAN, Plaintiff,**

v.

**S. Whitten PETERS, Acting Secretary of the Air Force, Defendant.**

**No. 98–CV–0039C(Sc).**

United States District Court,
W.D. New York.

Aug. 7, 2000.

John J. Phelan, Buffalo, NY, for plaintiff.

Denise E. O'Donnell, U.S. Attorney (Lynn S. Edelman, Assistant U.S. Attorney, of counsel), Buffalo, NY, for defendant.

## DECISION AND ORDER

CURTIN, District Judge.

## INTRODUCTION

Plaintiff William Sherman ("Sherman") commenced this action under the Rehabilitation Act, 29 U.S.C. § 791 et seq., and initially named as defendants the Secretary of the Department of Defense, William S. Cohen; and Acting Secretary of the Air Force, S. Whitten Peters. Item 1. By a second amended complaint, Sherman withdrew his claims against Secretary Cohen. Item 13. Sherman now alleges that his employer, the Niagara Falls Air Force Reserve Base, has illegally discriminated against him on the basis of his disability by refusing to provide a reasonable accommodation for his disability.[1] Item 13, ¶¶ 24–25. In September 1999, the Government moved alternatively for dismissal and summary judgment. Items 19–22. Sherman has submitted various opposing papers to this motion. Items 25–28. The Government has had an opportunity to reply to Sherman's opposition. Items 30–31. On January 25, 2000, the court heard oral argument on the Government's motion.

## BACKGROUND

Sherman served on active duty with the United States Air Force ("the USAF") from 1980 to 1985.[2] Item 13, ¶ 9. Sherman is a "30% compensably disabled veteran" of the USAF. Item 22, ¶ 3. Sherman became disabled in 1981 when doctors removed his right eye due to a cancerous melanoma. Id. ¶ 2 and Item 25, ¶ 2. In 1987, the USAF hired Sherman as a civilian Security Guard at the Niagara Falls Air Force Reserve Base ("the Base"). Item 22, ¶¶ 1, 5.

Sherman first requested an accommodation of his monocular vision in February 1996. Item 26, Exh. 4, pp. 33–34. In response to this initial request, the Civilian Personnel Office ("CPO") offered Sherman a job as a Recreation Assistant in April 1996. Id. at 30–31. Sherman declined this offer for several reasons. See infra. Also in April 1996, Sherman and his supervisor rearranged Sherman's security duties so that he no longer had to perform duties that took him outside of the office. Item 26, Exh. 4, pp. 23–24, 27–30. Sherman and his supervisor reached this agreement as an alternative to Sherman's taking the job as a Recreation Assistant. Id. at 29–30.

In July 1996, there was an opening on the Base for a Realty Specialist. Id. at 86–87 (describing duties). In September 1996, the CPO informed Sherman that he had been "non-selected" for the position. Id. at 89. In October 1996, Sherman renewed his request for a disability accommodation by a letter from his attorney, John J. Phelan. Item 21, Exh. C.

In April 1997, the USAF conducted a reorganization and reduction in force ("RIF"). As a result, the Base appointed Sherman to be one of six Desk Sergeants.

1. Sherman's Second Amended Complaint contained claims under the Vietnam Era Veterans Readjustment Act, 38 U.S.C. § 4214, and the Veterans Preference Act, 5 U.S.C. § 2108. However, Sherman has since represented to the court that he has abandoned any such claims and that he is pursuing only his claim of disability discrimination under the Rehabilitation Act. See Item 27, p. 7.

2. In 1985, Sherman received an honorable discharge from the USAF for reasons that were unrelated to the loss of his right eye. Item 22, ¶ 3.

Sherman's duties as a Desk Sergeant were substantially similar to the modified duties he had as a Security Guard, and Sherman continued to work security while performing only office-based tasks. However, Sherman claims that his job as an office-bound Desk Sergeant is unsatisfactory because his disability prevents him from advancing in his career in the same way that non-disabled Desk Sergeants have been able to advance their careers. *See* Item 25, ¶ 19.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate only where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.1994). In order for there to be a genuine issue of material fact, the court must find that the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Finally, in resolving a summary judgment motion, the court must look at all ambiguities in a light most favorable to the non-movant, *see Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1997), and must draw all reasonable inferences from the facts in favor of the non-movant. *See id.*

### II. Disability Discrimination Claim

The Rehabilitation Act ("the Act") provides that: "No otherwise qualified individual with a disability . . . shall, solely by

reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity . . . conducted by any Executive agency. . . ." 29 U.S.C.A. § 794(a) (West 1999).[3] Essentially, Sherman claims that the Base should have reasonably accommodated his disability by offering him a transfer to the position of Realty Specialist. In order to prevail on this theory, a plaintiff must establish:

> (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [Government employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position sought; and (4) that the [employer] refused to make such accommodations.

*Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 5 (2d Cir.1999).

### A. Legal Definition of Disability

In relevant part, the Code of Federal Regulations defines a person with a handicap as one who: "(i) [h]as a physical or mental impairment which *substantially limits* one or more of such person's *major life activities* . . . ." 29 C.F.R. § 1614.203(a)(1) (1999) (emphasis added). "Major life activities" are defined as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1614.203(a)(3). The concept of "substantially limits" is defined in the following way:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under

**3.** Cases that deal with disability discrimination issues under the ADA are applicable to cases that arise under the Rehabilitation Act,

and vice versa. *See, e.g., McDonald v. Commonwealth of Pennsylvania*, 62 F.3d 92, 95 (3d Cir.1995).

which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j) (1999).

In the present case, the Government concedes that Sherman has a "physical impairment" due to the loss of his right eye and that he is a "30% compensably disabled veteran" as a result.[4] Item 20, pp. 4–5.

However, the Government argues that Sherman has failed to establish that his physical impairment "substantially limits" one of his major life activities. *See id.* at 5. In support of the proposition that Sherman's monocular vision is not a "handicap" under the Rehabilitation Act, the Government relies on the Supreme Court's recent decision in *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999). In *Albertson's,* the Court held that monocular vision is not a *per se* handicap under the ADA and that plaintiffs suffering from monocular vision must establish their disabilities on a case-by-case basis. *Id.* at 2169. The Court, however, cautioned lower courts not to impose too heavy a burden on plaintiffs with monocular vision: "[O]ur brief examination of some of the medical literature [indicates] that people with monocular vision 'ordinarily' will meet the Act's definition of disability ... and we suppose that defendant companies will often not contest the issue." *Id.* In the end, however, the Court held that monocular plaintiffs must "prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial." *Id.*

## B. Sherman's Description of Physical Impairment

Sherman testified at a deposition in December of 1998 regarding the effects that monocular vision has on his life. Almost a year later, Sherman submitted an affidavit in which he again addressed the impact of monocular vision on his life. By his deposition and affidavit, Sherman has offered two different versions of how monocular vision affects his everyday life.

### 1. *Deposition*

At his deposition, Sherman stated that he is physically capable of working as a Desk Sergeant despite his physical impairment. Item 26, Exh. 4, p. 32. Sherman also testified that his impairment would not have prevented him from performing the duties of a Recreation Assistant. *Id.* at 31. Sherman stated that he has never had his driver's license revoked as a result of his monocular vision and that he still drives without restrictions on his license. *Id.* at 38, 99. Furthermore, Sherman testified that he can read and watch television, as well as walk without difficulty. *Id.* at 99. Similarly, Sherman asserted that he does not experience difficulty in caring for himself as a result of his impairment. *Id.* at 99–100. Finally, Sherman testified that his vision in his left eye is "excellent .... [I]t's 15/15, ... better than [20/20]." *Id.* at 100.

Sherman further testified that, despite his monocular vision, he has always maintained his military qualifications for using firearms. *See* Item 26, Exh. 4, pp. 38–41. In addition, Sherman stated that his vision does not keep him from competing in a local darts league, and that he is good enough to play competitively. *See id.* at 97–98, 100.

Sherman gave little testimony at his deposition to support a finding that he is handicapped under the Rehabilitation Act or ADA. Sherman only testified in very general terms that he experiences difficulty with his peripheral vision and depth perception. *Id.* at 100. On one occasion, while working as a Security Guard, Sher-

---

4. The fact that a plaintiff is classified as a 30% disabled veteran does not require a finding that the plaintiff is disabled under the Rehabilitation Act or the ADA. *See, e.g., Part-* *low v. Runyon,* 826 F.Supp. 40 (D.N.H.1993) (finding 30% or more disabled veterans were not handicapped under ADA or Rehabilitation Act).

man said that, "[I] walked into a tree and cut open the side of my face and that was due to the fact that I didn't see the tree." *Id.* at 35. Furthermore, Sherman stated that as a Desk Sergeant he also experienced "[a] lot of stress and ... strain" in his left eye because the job requires that he watch computer and television monitors. *Id.* at 49.

Finally, Sherman summarily concluded that he could not continue to work as a Desk Sergeant because the hazards of the job posed an ongoing threat to his health and safety. *Id.* at 34, 44, 156–57.

Q: What are the elements of hazard connected with your position?

A: I'm the sole individual responsible for preserving basically the heart of the entire base. We monitor all the alarms, all the facilities, the armories, everything is within that facility and I'm the only one there to guard that facility. The building is locked, I lock it and I have monitors, monitor people that come in. Not only do our people come in, but after 11 o'clock ... [I am] also the billing clerk[ ], [I] sign all the pay slips for the contractors. They all come through my office to get their slips signed. Any questions anyone might have they send them to me and I take care of the questions.

*Id.* at 156–57. However, Sherman identified no other specific activities that he had difficulty performing as a result of the loss of his right eye. *Id.* at 99–100.

2. *Affidavit*

In his recently submitted affidavit, Sherman now denies that he can safely perform the duties of Desk Sergeant. Item 25, ¶ 19. Sherman also now denies that he was ever physically capable of working as a Recreation Assistant. Item 28, ¶ 10.

In the affidavit, Sherman also states that the loss of his right eye has left him without peripheral vision on his right-hand side. Item 25, ¶ 5. Sherman claims that this loss of peripheral vision prevents him from safely performing certain day-to-day activities. As an example, Sherman states that cooking is hazardous for him because he constantly runs the risk of overturning a hot pan or pot that is outside of his limited peripheral vision. Further, Sherman alleges that he has broken toes on two occasions because his lack of peripheral vision has caused him to walk into walls and fall down stairs. *Id.* ¶¶ 7–8.

By his affidavit, Sherman also claims that his lack of depth perception has caused him to be involved in two automobile accidents, one in 1985 and the other in 1990. *Id.* ¶ 10. Sherman further states that his lack of depth perception has impaired his ability to shave without cutting himself and walk without bumping into things or stumbling. *Id.* ¶ 11.

### C. Reconciling Deposition Testimony and Affidavit

Sherman has contradicted himself on several crucial points through his deposition testimony and affidavit. In *Mack v. United States*, 814 F.2d 120 (2d Cir.1987), the court of appeals held: "It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Id.* at 124. More recently, the court of appeals reaffirmed this rule and held that a plaintiff cannot create a triable issue of fact by denying or contradicting a previously sworn statement. *Heil v. Santoro*, 147 F.3d 103, 111 (2d Cir.1998). In the present action, the court disregards Sherman's affidavit to the extent that it contradicts the testimony that Sherman gave in December of 1998.

### D. Letters from Treating Physician

Sherman has also attempted to rehabilitate his deposition testimony by submitting statements from his treating physician, Dr. Donald Schaefer. *See* Item 25, Exh. 1 and 2. In the first statement, Dr. Schaefer signed the following statement: "This is to certify in the case of William

Sherman, as a result of his monocular vision, his loss of visual field and loss of depth perception is substantial." Item 25, Exh. 1. This conclusory opinion does not help Sherman's cause very much and provides the court with no particularized evidence regarding the ways in which Sherman's monocular vision affects a major life activity.

■ In a further attempt to establish his handicap under the Act, Sherman has submitted another letter from Dr. Schaefer.[5] Item 25, Exh. 2. In this letter, Dr. Schaefer concludes:

> Mr. William Sherman [had his right eye totally removed] and therefore he can be easily blindsided from objects approaching from his right side. Therefore, [Mr. Sherman] must take extreme care with fast moving machinery, any activities that involve depth or height, [or] activities where wide peripheral visual fields are required.

*Id.* Not only is this letter from Dr. Schaefer inadmissible as evidence, but it does not *factually* demonstrate the ways in which Sherman's physical impairment "substantially limits" a major life activity. By these letters, Dr. Schaefer only describes the theoretical dangers that patients with monocular vision generally encounter. Yet in *Albertson's,* the Supreme Court has held that courts must engage in a case-by-case analysis of whether a plaintiff with monocular vision is handicapped under the Rehabilitation Act or the ADA. 119 S.Ct. at 2169. Moreover, Dr. Schaefer's statements are totally unresponsive to *Albertson's* requirement that plaintiffs "prove a disability by offering evidence that the extent of the limitation *in terms of their own experience* ... is substantial." *Id.* (emphasis added). The court finds that Dr. Schaefer's unsworn and conclusory opinions do not tend to prove that Sherman is handicapped under the Act.

**E. Substantial Limitation of Major Life Activity**

■ The court's review of the record reveals that Sherman's physical impairment does not prevent him from performing any major life activity—including the major life activities of seeing and working.

Indeed, Sherman maintains that the vision in his remaining eye is better than 20/20. In addition, Sherman sees well enough to drive a car, qualify for military firearms use, and play in a competitive darts league. In this way, the present action is substantially similar to Judge McAvoy's decision in *Ditullio v. Village of Massena,* 81 F.Supp.2d 397 (N.D.N.Y. 2000). *Ditullio* involved a disability discrimination claim from a plaintiff police officer who suffered from monocular vision. *Id.* at 405. Finding that the plaintiff was not disabled under the Act, the court in *Ditullio* relied on the fact that the plaintiff still had normal vision out of one eye and was able to see well enough to requalify for use of his service revolver. *Id.*

Nor does the record support a reasonable inference that Sherman's physical impairment substantially limits his ability to perform the major life activity of work. As a threshold matter, Sherman has stated that he *is* physically capable of performing the duties of his present job as a Desk Sergeant. Moreover, a plaintiff is only substantially limited in the major life activity of work is he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (1999); *see also Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir.1994). Thus, even if the court were to find that Sherman has raised an issue of fact as to

---

**5.** The court notes that Sherman submitted Dr. Schaefer's letter of November 15, 1999, in an inadmissible form. As a result, this letter cannot form the basis for Sherman's opposition to the Government's motion.

whether he is physically capable of performing his job as a Desk Sergeant, such testimony would not give rise to the inference that his physical impairment substantially limits the major life activity of work. Much like the plaintiff in *Ditullio*, Sherman is, in fact, presently employed by the defendant employer [6] and points to no class or broad range of jobs that his monocular vision precludes him from pursuing. 81 F.Supp.2d at 407.

In the end, the record as a whole shows that despite his physical impairment, Sherman is physically able to perform his duties as Desk Sergeant, drive a car, read, care for himself, walk without difficulty, qualify for military firearms use, and play darts competitively. Sherman's statements to the contrary in his affidavit do not raise a triable issue of fact, nor do the recent submissions from Dr. Schaefer.

In light of the foregoing, Sherman has failed to establish that his monocular vision prevents or significantly restricts his ability to perform any major life activity. Thus, Sherman fails to establish that his physical impairment constitutes a handicap under the Act, and his complaint is subject to dismissal for this reason.

## CONCLUSION

Sherman fails to establish that his physical impairment rises to the level of a handicap as that term is defined by law. Sherman's failure to establish a prima facie claim makes it unnecessary for the court to address whether Sherman was offered a reasonable accommodation.

For all the reasons set forth herein, the court grants defendant's motion for summary judgment. The complaint is dismissed, and judgment shall enter for defendant.

So ordered.

---

6. Sherman's present employment logically undermines any claim that he is precluded from or substantially limited in the life activity of work.