Sandra **RIECHMANN**, Plaintiff,

v.

**CUTLER–HAMMER, INC. and Eaton Corporation, Defendants.**

**No. CIV. A. 99–2052–CM.**

United States District Court,
D. Kansas.

Sept. 12, 2001.

Steven D. Horak, Overland Park, KS, for plaintiff.

Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, MO, John J. Doyle, Jr., Jill S. Stricklin, Constangy, Brooks & Smith, L.L.C., Winston-Salem, NC, Michael L. Blumenthal, Constangy, Brooks & Smith, L.L.C., Kansas City, MO, for defendants.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Pending before the court is plaintiff Sandra Riechmann's motion for judgment as a matter of law (Doc. 90). Plaintiff asserts that, as a matter of law, defendants have failed to establish that medical inquiries made of plaintiff were job-related and consistent with business necessity. Accordingly, plaintiff asserts she is entitled to judgment as a matter of law on her Americans with Disabilities Act medical inquiry claim. In addition, plaintiff seeks the court to award her a new trial and grant her injunctive relief. For the reasons set forth below, plaintiff's motion is denied.

● **Background**

Plaintiff filed suit against defendants Cutler–Hammer, Inc. and Eaton Corporation alleging that defendants discriminated against her on the basis of her disability, failed to accommodate her disability and subjected her to disability-based harassment, all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Plaintiff further asserted that defendants made improper medical inquiries regarding her medical condition in violation of the ADA and that defendants retaliated against her when she requested an accommodation under the ADA. Upon motion by defendants, the court granted summary judgment to defendants on all but one of plaintiff's claims. Plaintiff's ADA improper medical inquiry claim proceeded to trial. Following trial on the merits, the jury rendered a verdict

in defendants' favor. Specifically, upon special questions, the jury determined that defendants "made medical inquiries" of plaintiff. However, the jury further determined that the medical inquiries made "were job related and consistent with business necessity."

At the close of defendant's evidence, plaintiff sought judgment as a matter of law under Fed.R.Civ.P. 50 asserting that defendants had failed to meet their burden to establish that the medical inquiries made of plaintiff were job related and consistent with business necessity. The court took plaintiff's motion under advisement. However, upon the jury's verdict rendering a decision for defendant, the court found plaintiff's motion to be moot. Plaintiff now renews her motion for judgment as a matter of law.

● **Judgment as a Matter of Law**

● **Standard**

Judgment as a matter of law "should be cautiously and sparingly granted."

Fed.R.Civ.P. 50(b); *Zuchel v. City & County of Denver,* 997 F.2d 730, 734 (10th Cir.1993). Judgment as a matter of law is appropriate "only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." *Riggs v. Scrivner, Inc.,* 927 F.2d 1146, 1149 (10th Cir.1991). Such judgment is proper only when "the evidence so strongly supports an issue that reasonable minds could not differ." *Ryder v. City of Topeka,* 814 F.2d 1412, 1418 (10th Cir.1987). In determining whether judgment as a matter of law is proper, the court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. See *Lucas v. Dover Corp.,* 857 F.2d 1397, 1400 (10th Cir.1988). Nevertheless, the court must find more than a mere scintilla of evidence favoring the non-movant; the court must find that "evidence was before the jury upon which it could properly find against the movant." *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988).

● **Discussion**

Plaintiff seeks judgment as a matter of law under Fed.R.Civ.P. 50 asserting that defendants have failed to meet their burden to establish that the medical inquiries made of plaintiff were job related and consistent with business necessity.

■ Generally, the ADA prohibits employers from making inquiries as to whether an employee is an individual with a disability or as to the nature and severity of any such disability. 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.13(b). This prohibition was intended to prevent inquiries of employees that do not serve a legitimate business purpose. 29 C.F.R. Pt. 1630, App. § 1630.13(b). An employer is allowed, however, to make medical inquiries of employees as long as such inquiries are job related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(B); 29 C.F.R. § 1630.14(c). Specifically, the ADA "permits employers to make inquiries or require medical examinations necessary to the reasonable accommodation process...." 29 C.F.R. Pt. 1630, App. § 1630.14(c). As the court instructed the jury, determining whether a medical inquiry is job related and consistent with business necessity must be analyzed in an overall context rather than considering each individual inquiry in isolation. See e.g., *Martin v. State of Kansas,* 190 F.3d 1120, 1134 (10th Cir.1999) (examining legality of medical inquiries by employer of plaintiff in an overall context), overruled on other grounds as recognized in *Isham v. Wilcox,* No. 00–2177, 2001 WL 505235, at *1133–34 (10th Cir. May 14, 2001) (unpublished); *EEOC v. Prevo's*

*Family Mar., Inc.,* 135 F.3d 1089, 1093 (6th Cir.1998) (same).

### ● Disparate Impact Analysis

■ Plaintiff challenges the sufficiency of defendants' proof, asserting that the evidence was insufficient to support the verdict that the medical inquiries made of plaintiff were job related and consistent with business necessity. First, plaintiff asserts the court should examine the defendants' showing of job relatedness and consistency with business necessity by applying the legal principles applied in disparate impact claims. Plaintiff asserts that under the disparate impact principles defendants would be required to show that each of its medical inquiries served a "compelling need" and was of "great importance to job performance" to establish that the inquiries were job related and consistent with business necessity. The court disagrees.

■ The disparate impact theory of discrimination has been applied "where clearly identifiable employment practices or criteria, regardless of whether there was intent to discriminate, resulted in a less favorable impact upon a protected group." *Coe v. Yellow Freight Sys., Inc.,* 646 F.2d 444, 450 (10th Cir.1981). In a disparate impact case, the employer bears the burden of proving that a given requirement is justified by business necessity. *Williams v. Colorado Springs,* 641 F.2d 835, 840 (10th Cir.1981). To accomplish this, the employer must show that the business purpose for the challenged practice or criteria is "sufficiently compelling to override any [discriminatory] impact," that the practice "effectively carr[ies] out the business purpose it is alleged to serve," and that there is no available "acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well

with a lesser [discriminatory] impact." *Id.* at 840–41. Therefore, the court must employ a balancing test to determine whether the business purpose is sufficiently compelling to outweigh any discriminatory impact. *Id.*

In the ADA context, the disparate impact analysis is appropriate in claims involving improper qualification standards, tests or selection criteria, when "uniformly applied criteria have an adverse impact on an individual with a disability or a disproportionately negative impact on a class of individuals with disabilities." 42 U.S.C. § 12112(b)(6); 29 C.F.R. Pt. 1630.15, App. §§ 1630.15(b)-(c). It is a defense to such claims that the challenged standards, tests or criteria are job related and consistent with business necessity. 29 C.F.R. § 1630.15(b). According to the EEOC's Interpretative Guidance to the ADA, the concept of "business necessity" under Section 504 of the Rehabilitation Act of 1973 should apply to claims of improper qualification standards, tests or selection criteria under the ADA. 29 C.F.R. Pt. 1630.10. In turn, the Analysis of Federal Regulations pertaining to the Rehabilitation Act provides that the Title VII disparate impact and business necessity principles set forth in *Griggs v. Duke Power,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), should apply to analogous cases under the Rehabilitation Act in which employers used tests or other selection criteria that tended to screen out handicapped persons. 42 Fed.Reg. 22,688 (1977).

By contrast, as asserted by defendants, claims of improper medical inquiries under the ADA do not lend themselves to analysis under disparate impact principles, as such cases do not involve facially neutral practices or criteria which have a disproportionately negative impact upon qualified individuals with a disability. Unlike disparate impact claims, it is immaterial to

plaintiff's improper medical inquiry claim whether the defendants' medical inquiries were facially neutral or whether they may have had a disparate impact upon disabled people. In a medical inquiry claim under the ADA, there is no disparate impact to be weighed or to be balanced against the employer's business objectives. Thus, the business necessity defense is not subject to the principles governing adverse impact claims.

Moreover, in this case plaintiff has not alleged that defendants engaged in a pattern or practice of discriminating against qualified individuals with a disability, nor has she presented any evidence suggesting that any such discriminatory pattern or practice existed. Further, there is no evidence indicating that defendants used the challenged medical assessment forms with respect to any employee other than plaintiff.

The legislative and regulatory materials relating to claims of improper medical inquiries under the ADA or the Rehabilitation Act do not contain a suggestion that disparate impact principles apply to individual improper medical inquiry claims. See 42 Fed.Reg. 22,689 (1977); 29 C.F.R. §§ 1630.13–14; 29 C.F.R. Pt. 1630, App. §§ 1630.13–14. Instead, the EEOC's Interpretive Guidance to the ADA provides that the employer's medical inquiries must be job related and serve a "legitimate business purpose." 29 C.F.R. Pt. 1630, App. § 1630.13(b). Similarly, the Interpretive Guidance states that employers are permitted to make medical inquiries or require medical examinations "when there is a need to determine whether an employee is still able to perform the essential functions of his or her job"—not when there is a "compelling" need, an "immediate" need, or a need which is of "great importance" to the employer. See 29 C.F.R. Pt. 1630, App. § 1630.14(c). Accordingly, the court denies plaintiff's request that the court apply disparate impact principles to determine whether defendants met their burden to establish at trial that any medical inquiries made were job related and consistent with business necessity. Plaintiff's motion is denied as to this issue.

● **Exhibit 103 and 105**

■ Second, plaintiff asserts that the questions contained in Exhibit 103 presented at trial violates the ADA, § 12112(d)(4)(A). Specifically, plaintiff asserts that defendants failed to produce evidence to establish that the information requested via Exhibit 103 from plaintiff was job-related and consistent with business necessity. Exhibit 103 is entitled a "Medical Assessment of Ability to do Work–Related Activities." Defendants sent this form to Dr. Carabetta to fill out in connection with the independent medical examination (IME) of plaintiff. The form requested:

1. **Diagnosis**

● The severity of Diagnosis

● Cause of debilitating diagnosis

● Is the employee receiving counseling? How Often she receives counseling, and the title address and phone number for the person who is seeking counseling.

● Is the employee suicidal?

● What medications currently is the employee taking? Please include the dosage, frequency and any limitations?

● The plan of treatment for plaintiff to include goals, objectives, estimated length of treatment and discharge plans?

● Describe any limitations and include medical/clinical findings that support this assessment.

● What is the current GAF score?

Plaintiff also contends that Exhibit 105, the Independent Medical Evaluation Report completed by Dr. Carabetta and presented at trial, violates the ADA. Specifically, plaintiff contends that defendants failed to present evidence to meet their burden to establish that the medical inquiries made of plaintiff via Dr. Carabetta were job related and consistent with business necessity. The information gathered by Dr. Carabetta and conveyed to defendants included:

- Family history
- How many drinks plaintiff took per day
- How many cigarettes [s]he smoked per day
- The extensive details of her stroke and rehabilitation of her stroke
- Plaintiff's allergies to codeine, sulfa, penicillin and aspirin
- Plaintiff's medical problems of high cholesterol and hypertension
- Plaintiff's congenital factors
- Any previous illness which plaintiff had
- Any previous injury which plaintiff had

As noted above, the jury was instructed that to determine whether the medical inquiries defendants made of plaintiff were job related and consistent with business necessity, the inquiries must be analyzed in an overall context rather than considering each medical inquiry in isolation. See *Martin*, 190 F.3d at 1134. Given the applicable law and the evidence presented at trial, the court finds defendants presented ample evidence to meet their burden to establish that any medical inquiries made of plaintiff were job related and consistent with business necessity.

The evidence presented at trial established the following. Plaintiff sustained a severe stroke which rendered her unable to work for six months. When she returned to work in January 1998, plaintiff was still under significant work restrictions which were to remain in place through the end of February 1998. Despite these restrictions, plaintiff repeatedly requested leave to return to an outside sales position. Accordingly, defendants decided there was a need to determine whether plaintiff was able to perform the essential functions of the outside sales job and, if so, whether any specific accommodations would be required to allow her to perform it.

Defendant's corporate human resources manager Jeff Androlia testified that each of the defendants' medical inquiries was consistent with the overall objective of determining whether plaintiff could return to her outside sales job and, if so, whether any accommodations would be required. Mr. Androlia testified that the inquiry regarding whether plaintiff was suicidal was necessary to determine whether she was likely to harm herself or others while working at defendants' business. Mr. Androlia further testified that the question about plaintiff's medications would allow the doctor to determine whether she could safely operate an automobile as required by the outside sales job. Similarly, Mr. Androlia testified that the inquiry regarding counseling was intended to enable the evaluation physician to obtain any pertinent information about mental or emotional conditions which may have inhibited plaintiff's ability to work.

Dr. Carabetta testified at trial that the medical inquiries at issue were asked with the intent to further the overall objectives of the IME, that the inquiries were intended to determine whether plaintiff could perform the outside sales functions, whether there were any restrictions on her ability to perform the relevant job duties, and whether any reasonable accommodations

would be necessary to enable her to work as an outside sales person. Dr. Carabetta testified that the medical history he obtained from plaintiff was necessary for him to "make an accurate evaluation of her ability to perform her outside sales job," to assess whether there were "any medical limitations," and to determine "what, if any, accommodations she would need." (Carabetta Dep. at 66–67). Dr. Carabetta explained that in his professional judgment, he could not do a complete IME without knowing what medications plaintiff was taking at the particular point in time. In addition, Dr. Carabetta also testified that the inquiry about whether plaintiff was receiving counseling was significant in assessing her ability to perform work. (Id. at 69–70).

Plaintiff contends that defendants should have been restricted to a less intrusive form of medical examination of plaintiff limited only to determining whether plaintiff was able to perform her job and whether she had any restrictions that would prevent her from performing the relevant job duties. However, the regulations implementing the ADA allow employers to make medical inquiries regarding any reasonable accommodations that may be required to assist a qualified individual with a disability perform a job. 29 C.F.R. Pt. 1630, App. § 1630.14(c).

In addition, plaintiff contends that the medical inquiries made of plaintiff could not have been job related and consistent with business necessity because no outside sales position was available in February 1998. However, plaintiff had requested to be returned to an outside sales position, despite the current unavailability. Further, Mr. Androlia testified that the medical inquiries made of plaintiff were the first step in the process of returning plaintiff to an outside sales position. The evidence showed that based upon the annual turnover rate in the outside sales force, an outside sales job could have become available for plaintiff to fill. In addition, Jim Bachard, defendants' regional sales manager testified that he told plaintiff in March 1998 that as soon as she developed the necessary skills to work as an outside salesperson he would find an outside sales position for her.

Next, plaintiff contends that the medical inquiries made of plaintiff were not consistent with business necessity because defendants believed plaintiff's medical restrictions rendered her unable to perform an outside sales job. However, Mr. Androlia testified that it was "the doctor's call," rather than the company's as to whether plaintiff was physically capable of working as an outside sales representative.

Finally, plaintiff seems to assert that defendants should be liable for the medical inquiries made by Dr. Carabetta on his own initiative. The evidence established at trial shows that defendants did not direct Dr. Carabetta to inquire about much of the information contained in Exhibit 105, i.e., plaintiff's family history, drinking and tobacco usage, details regarding her stroke and her rehabilitation, her drug allergies, other medical problems, congenital factors, and previous illnesses and injuries. Instead, Dr. Carabetta testified that he asked these questions because he believed he needed this information in order to conduct a complete evaluation and make an "appropriate judgment" as a "practicing professional." The jury could properly conclude the objectionable medical inquiries were not made at the defendants' request. And, as the jury was instructed in this case, defendants may not be held liable for medical inquiries made by a third party where the inquiries are not made at the defendants' request. See 42 U.S.C. § 12112(d)(4) ("A covered entity shall not ... make inquiries of an employee as to

whether such employee is an individual with a disability or as to the nature or severity of the disability"); 29 C.F.R. § 1630.13(b) ("it is unlawful for a covered entity to ... make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability").

Viewing the evidence in the light most favorable to defendants (as the nonmoving parties), the court finds that the jury could properly return a verdict for defendant, finding that defendants' medical inquiries were job related and consistent with business necessity. It is not the role of the court to "weigh the evidence, pass on the credibility of the witnesses, or substitute [its] conclusion for that of the jury." *Harolds Stores, Inc. v. Dillard Dept. Stores*, 82 F.3d 1533, 1546 (10th Cir.1996). Having found there was sufficient evidence presented for the jury to reach its conclusion on plaintiff's improper medical inquiry claim, the court denies plaintiff's motion for judgment as a matter of law.

### III. Motion for a New Trial

■ Plaintiff has requested that the court grant her a new trial. However, plaintiff has not provided a basis for such decision.

■ Motions for new trials are "not regarded with favor and should only be granted with great caution." *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir.1991). A new trial is not to be granted unless the court finds that prejudicial error has occurred or substantial justice has not been done. *Johnson v. Colt Indus. Operating Corp.*, 609 F.Supp. 776, 779 (D.Kan.1985), aff'd, 797 F.2d 1530 (10th Cir.1986). In other words, new trials should be granted only in limited circumstances where the court believes the verdict is against the weight of the evidence, where prejudicial error has occurred, or

where a miscarriage of justice would result should the verdict be permitted to stand. *Braintree Lab., Inc. v. Nephro Tech, Inc.*, 81 F.Supp.2d 1122, 1136 (D.Kan.2000); Fed.R.Civ.P. 59. Given this guidance, motions for new trial are committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

Here, plaintiff has failed to specify any grounds supporting her motion for a new trial and has failed to address the relevant criteria in her brief. The court finds no basis to grant plaintiff's motion for a new trial. Accordingly, plaintiff's motion for a new trial is denied.

### ● Motion for Injunctive Relief

■ Plaintiff has requested the court issue an injunction restricting defendants from making disability related inquiries and using the Medical Assessment form which it supplied to Dr. Carabetta in connection with plaintiff's IME. Even were the court to assume defendants' medical inquiries were unlawful, plaintiff has not provided any factual basis or legal authority to support her request for injunctive relief.

■ To qualify for an injunctive remedy, a plaintiff must "show that [she] has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged conduct." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Given the facts of this case, it is unlikely that plaintiff, who has been totally and permanently disabled from work for over two years—will be subjected to any future IME's or other medical inquiries at the request of the company. See *Gudenkauf v. Stauffer Communications, Inc.*, 936 F.Supp. 805, 809 n. 2 (D.Kan.1996) (injunctive relief not appropriate where plaintiff no longer

worked for defendant employer and her lawsuit concerned only allegations of past acts of discrimination).

Even if plaintiff were to seek to return to active employment with defendants at some point, there is no evidence that plaintiff is in any foreseeable danger of being subjected to the medical inquiries forming the basis of this lawsuit. There is no evidence that defendants had or have a practice of sending its employees to Dr. Carabetta for evaluation. In fact, the evidence at trial indicated that plaintiff was the only employee of defendants who was ever examined by Dr. Carabetta at the company's request. Moreover, the evidence established that since mid–1998, the defendants have not used any standardized form in connection with medical examinations of its employees, as the defendants' disability insurance carrier began handling all requests for medical evaluations at that time. Accordingly, the court finds plaintiff has not established any danger that she will be subjected to the allegedly unlawful medical inquiries, as the defendant has ceased the challenged practices. Therefore, the court finds injunctive relief is inappropriate and denies plaintiff's request for such relief.

● **Order**

IT IS THEREFORE ORDERED that plaintiff's motion for judgment as a matter of law (Doc. 90) is denied.

**IT IS SO ORDERED.**