**Belinda FOUNTAIN, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, and Glenn S. Goord, Defendants.**

**No. 99–CV–389.**

United States District Court, N.D. New York.

March 11, 2002.

Hinman Straub P.C. (Edward J. Greene, Jr., Esq., of counsel), Albany, NY, for Plaintiff.

Eliot Spitzer, Attorney General of the State of New York, Office of the Attorney General (Bruce J. Boivin, Esq., of counsel), Albany, NY, for Defendants.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Belinda Fountain ("Fountain" or "plaintiff") commenced this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(d)(4)(a) to challenge a policy promulgated by the defendant, New York State Department of Correctional Services' ("DOCS"), which requires her to provide a diagnosis of her medical condition each time she is absent from work. She also sues defendant Glenn S. Goord ("Goord") (collectively, "defendants") in his capacity as Commissioner of DOCS for causing the policy to be issued and enforced. Defendants have moved for summary judgment pursuant to Fed. R.Civ.P. 56. Plaintiff made a cross-motion for summary judgment. Oral argument was heard on July 27, 2001, in Albany, New York. Decision was reserved.

## II. FACTS

The following are the undisputed facts in this case, and where noted, the facts as alleged by each side. Fountain has been employed as a Corrections Officer by DOCS since 1989. Goord serves as Commissioner of DOCS. DOCS is an agency of the State of New York that maintains 71 correctional facilities throughout the state, in which over 69,000 inmates are confined. DOCS employs a workforce of over 30,000.

The subject matter of the instant litigation is a DOCS' time and attendance policy regarding paid sick leave to its employees. This policy authorizes DOCS employees to use sick leave for personal illness, medical or dental appointments, and illness or death in an employee's immediate family.

This policy also provides that an employee returning to work after taking sick leave may be required to provide a medical certificate containing a diagnosis. "[A] supervisor may exercise the right to request certification for any absence charged to sick leave or family sick leave regardless of duration." (Mindel Aff. at Ex. B.) The doctor's certification must be on the doctor's letterhead and must contain: (1) a brief diagnosis of the condition treated; (2) a statement that the employee was unable to work during the absence; and (3) a prognosis including, where possible, the date of return to work or continued absence until next scheduled appointment date. It must also state that the employee is fit to perform their duties. In addition, the certificate must be signed by the doctor. The facility's "Time and Attendance Lieutenant" reviews the medical certification from employees who wish to charge their absence to sick leave to determine if they may do so. (Baxter Aff. at ¶ 16.)

There is a dispute as to whether the "brief" diagnosis may be specific or general. DOCS contends that the diagnosis may be general, such as "recovering from minor surgery." Plaintiff submitted her affidavit stating that in the past, certifications containing such general diagnoses were rejected by DOCS. When the medical certification is rejected, employees may be reprimanded and punished.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in August of 1998. She received a Notice of Right to Sue letter on December 17, 1998, and this suit followed.

## III. DISCUSSION

### A. Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

### B. *Americans with Disabilities Act*

The ADA is designed, in part, to protect employees from discrimination based on disabilities or perceived disabilities. Toward that end, the ADA prohibits employers from inquiring into whether the employee has a disability and the nature or severity of such a disability. *See* 42 U.S.C. § 12112(d)(4)(A). It also restricts the employer's ability to conduct medical examinations and to conduct inquiries that may uncover employees' disabilities or perceived disabilities. *Id.*

■ Under this provision, a prohibited inquiry in and of itself will be enough to assert a cause of action. *See id.* at (d)(4)(A). The plaintiff need not establish a disability in order to state a claim for prohibited inquiry under the ADA. *Tice v. Ctr. Area Transp. Auth.,* 247 F.3d 506, 520 (3d Cir.2001). *See Griffin v. Steeltek, Inc.* 160 F.3d 591, 594 (10th Cir.1998) (disability not required for prohibited inquiry plaintiff); *accord Cossette v. Minnesota Power & Light,* 188 F.3d 964, 969 (8th Cir.1999).

■ In order to determine whether an inquiry is of the type prohibited by the ADA, it is necessary to determine whether the inquiry would be likely to require employees to disclose their disabilities or perceived disabilities. *See Roe v. Cheyenne Mt. Conf. Resort,* 124 F.3d 1221, 1237 (10th Cir.1997) (affirming district court's finding that requiring employees to disclose their prescription drug medication is a prohibited inquiry because such a disclosure would likely force employees to reveal disabilities or perceived disabilities).

■ The ADA provides a limited exception to the general prohibition on medical inquires. Such inquiries are permitted only when "shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). An inquiry falls within this exception when it is necessary to "determine whether an employee is still able to perform essential functions of his or her job," *Riechmann v. Cutler–Hammer, Inc.,* 183 F.Supp.2d 1292, 1296 (D.Kan.2001), or to ascertain whether "[the] employee will pose a direct threat to health and safety [in the workplace] due to a medical condition." *Lent v. Goldman Sachs & Co., ,* 1998 WL 915906, *8, 1998 U.S. Dist. LEXIS 20371, *26 (S.D.N.Y. Dec. 29, 1998).

■ A prohibited inquiry claim does not necessitate the same analysis of legitimate non-pretextual reasons for the inquiry that a general discrimination claim would. *See Gonzales v. Sandoval County,* 2 F.Supp.2d 1442, 1445 (D.N.M.1998). Instead, in order to fall within the exception provided for in Section 12112(d)(4)(A), the employer must demonstrate some reasonable basis for concluding that the inquiry was necessary. That is, the employer must show that it had some reason for suspecting that the employee, or class of employees, would be unable to perform essential job functions or would pose a danger to the health and safety of the workplace. " 'An employee's behavior cannot be merely annoying or inefficient to justify an examination; rather, there must be genuine reason to doubt whether that employee can perform job-related functions.' " *Ditullio v. Village of Massena,* 81 F.Supp.2d 397, 411 (N.D.N.Y.2000) (quoting *Sullivan v. River Valley School District,* 197 F.3d 804, 811 (6th Cir.1999)).

In cases applying this exception, the employer's inquiries were motivated by facts that led it to suspect that the employee might not be able to perform job functions or might pose a threat to the health and safety of their work environment. For example, in *Ditullio,* the court held that the employer's request for a medical examination was related to plaintiff's ability to safely perform his duties as a police officer patrolman after he suffered an eye injury which caused blindness. *Id.* In *Riechmann,* the court held that it was consistent with a business necessity for the defendants to inquire whether a traveling salesperson was able to perform the functions of her job after suffering a severe stroke that caused her to be absent from work for six months. *Riechmann,* at 1300. An employer's inquiry into an employee's ability to perform the functions of his job after he suffered a back injury at work was held

not to violate the ADA because the injury appeared to affect his ability to do his work. *Porter v. United States Alumoweld Co.,* 125 F.3d 243, 246 (4th Cir.1997). *See also, Donofrio v. N.Y. Times,* 2001 WL 1663314, at *7, 2001 U.S. Dist. LEXIS 13788, at *21 (S.D.N.Y. Aug. 24, 2001)(stating that where an employee had not reported to work in over three weeks inquiry may be made as to whether he is capable of performing the functions of the job); *Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.,* 902 F.2d 208, 212 (2d Cir.1990)(stating that inquiry is appropriate where teacher did not report to work for approximately a month at the end of the school year).

### C. *DOCS' Policy*

#### 1. *Prohibited Inquiry*

■ DOCS' policy makes inquiries into the medical status of employees by requesting a brief diagnosis from employees returning from an absence. Assuming that the "brief" diagnosis need not be specific even a diagnosis in general terms, "received chemotherapy," could cause an employee in some circumstances to divulge a disability or perceived disability. *See Roe,* 124 F.3d 1221(stating that inquiry into an employee's prescription medication is prohibited because it may reveal a disability).

DOCS' sick leave policy permits the Time and Attendance Lieutenant to require the employee to provide medical certification, including a diagnosis, whenever the employee takes an unauthorized absence for any length of time. Just like the disclosure of prescription drug information, the required disclosure of a medical diagnosis would be likely to cause employees to reveal a disability or perceived disability.

## 2. *Business Necessity*

It must then be asked whether DOCS' policy falls within the exception provided in 42 U.S.C. § 12112(d)(4). In order to fall within this exception, the DOCS' policy must be based upon a reasonable expectation that the inquiry into the protected information would reveal that the employee was unable to perform work related functions or was a danger to the health and safety of the workplace. The defendants argue that employees are rarely required to provide medical documentation and diagnosis for short term absences. Nevertheless, the sick leave policy provides no limitation on the ability of the defendants to ask for medical diagnosis. Employees may take an unplanned single day leave of absence for a myriad of reasons, the vast majority of which do not suggest an inability to do their job or a threat to their work environment. Examples of such reasons include the common cold or care of a sick child. Therefore, no reasonable factfinder could conclude that an inquiry triggered by a single day's absence from work is the type of reasonable expectation discussed above.

It should be noted that this opinion is tailored to the DOCS' policy as it is currently written. This opinion does not reach other circumstances under which DOCS may request medical certification, including a request for a diagnosis. However, the policy as it is currently written allows inquiry after only a single day's absence from work. DOCS must have more reason to suspect that an employee is unable to perform their job functions or needs an accommodation than a few days' absence from work.

## IV. *CONCLUSION*

Accordingly, it is

ORDERED that

1. The defendants, New York State Department of Correctional Services and Glenn S. Goord's, motion for summary judgment is DENIED;

2. The cross-motion for summary judgment by plaintiff Belinda Fountain is GRANTED;

3. The defendants are permanently enjoined from implementing their sick leave policy in so far as such implementation is inconsistent with this opinion;

4. The plaintiff, Belinda Fountain, is entitled to reasonable attorneys fees and expenses pursuant to 42 U.S.C. § 12205;

5. The plaintiff shall file and serve a verified application for attorneys' fees and expenses on or before March 26, 2002. The defendants may file and serve in opposition on or before April 9, 2002. The application will be on submit.

The Clerk will thereafter be directed to enter a final judgment.

IT IS SO ORDERED.