333 F.3d 88
 Deborah CONROY and Blake Swingle, individually and on behalf of all others similarly situated, Plaintiffs,
Belinda Fountain, Plaintiff-Appellee,
v.
NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Glenn Goord, individually, and in his official capacity as Commissioner of the New York State Department of Correctional Services, Defendants-Appellants.
 Docket No. 02-7415.
 United States Court of Appeals, Second Circuit.
 Argued: December 12, 2002.
 Decided: June 18, 2003.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Evelyn M. Tenenbaum, Assistant Solicitor General of the State of New York, Albany, N.Y. (Eliot Spitzer, Attorney General, Daniel Smirlock, Deputy Solicitor General, and Nancy A. Spiegel, Assistant Solicitor General, on the brief), for Defendant-Appellants.
 Edward J. Greene, Jr., Hinman Straub P.C., Albany, N.Y., for Plaintiff-Appellee.
 Ann Elizabeth Reesman, McGuiness, Norris & Williams, LLP, Washington D.C., for Amicus Curiae Equal Employment Advisory Counsel.
 Stephen A. Bokat, Robin S. Conrad, and Ellen Dunham Bryant, National Chamber Litigation Center, Inc., Washington, D.C., for Amicus Curiae The Chamber of Commerce of the United States.
 Daniel B. Korhman, AARP Foundation Litigation, and Melvin Radowitz, AARP, Washington, D.C., for Amicus Curiae AARP.
 Before: CABRANES, POOLER, and KATZMANN, Circuit Judges.
 POOLER, Circuit Judge.
 
 
 1
 Defendants-Appellants the New York State Department of Correctional Services ("DOCS") and Glen Goord, DOCS Commissioner appeal from the March 11, 2002, judgment of the District Court for the Northern District of New York (David N. Hurd, Judge), denying DOCS's motion for summary judgment and granting Plaintiff-Appellee Belinda Fountain's motion for summary judgment. The DOCS sick leave policy requires employees to submit general diagnoses as part of a medical certification procedure following certain absences. Fountain challenged the policy as violating Americans with Disabilities Act ("ADA") prohibitions against inquiries into the disabilities of a current employee. She sought a declaratory judgment that the relevant parts of DOCS's policy violates the statute and injunctive relief preventing DOCS from requiring her to comply with the general diagnosis requirement. Although we agree with the district court that the policy falls within the ADA's general prohibition, we find that genuine issues of material fact preclude summary judgment on the issue of the business necessity defense provided for in the statute. We therefore affirm in part and vacate and remand in part.
 
 BACKGROUND
 
 2
 This case involves a DOCS Sick Leave Directive ("the Directive" or "the Policy") which Plaintiff contends violates the ADA's prohibition against inquiry into the disabilities of current employees. DOCS is the New York State agency responsible for the maintenance of correctional facilities throughout the state.
 
 
 3
 Under some circumstances, the challenged Directive requires that an employee bring medical certification upon returning to work after an absence. The certification must include a brief general diagnosis that is "sufficiently informative as to allow [DOCS] to make a determination concerning the employee's entitlement to leave or to evaluate the need to have an employee examined by [the Employee Health Service] prior to returning to duty." Certification is usually not required for absences of less than four days. However, the Directive indicates that "[i]n exceptional cases, a supervisor may exercise the right to request certification for any absence charged to sick leave or family sick leave regardless of duration." The Directive then references another DOCS directive, Controlling Unexcused and Unauthorized Absences, which reads "[m]edical certification may be required of any employee who requests to charge an absence to sick leave credits." However, this second directive may limit the reach of the requirement by clarifying that only "[e]mployees suspected of attendance abuse may be required to furnish medical certification for all absences which they seek to charge to sick leave." In addition to these directives, a memorandum indicates that when an employee has an attendance problem, and informal discussions have not remedied the problem, the supervisor should have a formal discussion with the employee, and instruct the employee that certification will be required for all future absences regardless of the duration of the illness. The guidelines for identifying attendance abusers explicitly leave a great deal of discretion in the hands of lower management.
 
 
 4
 Fountain is a Corrections Officer employed by DOCS since 1989. Fountain suffers from asthma and severe pulmonary obstructive disease. She has asked DOCS for accommodation because of these conditions in the past. Fountain filed a complaint about the Policy with the Equal Employment Opportunity Commission ("EEOC") in August of 1998. She received a Notice of Right to Sue letter on December 17, 1998, and this suit followed. Plaintiff alleged that the Policy's requirement of a general diagnosis violates provisions in the ADA prohibiting inquiries into disability. She sought declaratory relief that the general diagnosis requirement violates the ADA and an injunction prohibiting DOCS from requiring her to submit a general diagnosis.
 
 
 5
 The District Court for the Northern District of New York denied DOCS's motion for summary judgment, and granted Fountain's cross-motion for summary judgment. Fountain v. New York State Dep't of Corr. Servs., 190 F.Supp.2d 335 (N.D.N.Y.2002). The district court first found that even if the Directive required only general rather than specific diagnoses, this "could cause an employee in some circumstances to divulge a disability or perceived disability." Id. at 339. Thus, the court concluded that the certification requirement was an "inquiry" under the ADA. Id. The court then interpreted the Policy as "allow[ing] inquiry after only a single day's absence from work." Id. at 340. It found that because the Policy was not "based upon a reasonable expectation that the inquiry into the protected information would reveal that the employee was unable to perform work related functions or was a danger to the health and safety of the workplace," the Policy did not fall within the ADA's business necessity exception. Id.
 
 
 6
 This appeal followed. The Equal Employment Advisory Council and the Chamber of Commerce of the United States have filed a brief amici curiae in support of DOCS. AARP has filed a brief amici curiae in support of Fountain.
 
 DISCUSSION
 
 7
 Fountain brings her challenge under a provision of the ADA which provides:
 
 
 8
 A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.
 
 
 9
 42 U.S.C. § 12112(d)(4)(A). Our Court has not previously interpreted this provision. Indeed, relatively few courts have addressed either this ADA prohibition or the related subsections involving preemployment inquiries and employment entrance examinations. See 42 U.S.C. § 12112(d)(2)-(3).
 
 
 10
 We review a grant of summary judgment de novo, using the same standard that applied in the district court. Catlin v. Sobol, 93 F.3d 1112, 1116 (2d Cir.1996). The court, resolving all ambiguities and drawing all inferences in favor of the non-moving party, should grant summary judgment only if it determines that there is no genuine issue of material fact. Id.
 
 
 11
 In challenging the district court's judgment, DOCS first argues that Fountain is not a proper plaintiff to challenge the Policy. DOCS then contends that its general diagnosis requirement is not the type of inquiry prohibited by the statute. DOCS also defends its Policy as job-related and consistent with business necessity.
 
 
 12
 I. Fountain Has Standing To Challenge the Policy under 42 U.S.C. § 12112(d)(4)(A)
 
 
 13
 Before turning to the merits of the case, we address DOCS's contentions that Fountain is not a proper plaintiff to challenge the Policy. Because of their jurisdictional nature, we may of course address standing arguments, even where, as here, they were not raised in the district court. Thompson v. County of Franklin, 15 F.3d 245, 248 (2d Cir.1994). DOCS's basic contention is that because Fountain has disabilities of which it is already aware, the ADA authorizes it to make certain types of inquiries. Therefore, DOCS maintains, Fountain has suffered no injury from the Policy and she lacks standing to bring this challenge on her own behalf or on behalf of others.
 
 
 14
 Since Fountain has already revealed her disability to and requested accommodation from DOCS, DOCS argues that it can permissibly make inquiries into her disability that are "necessary to the reasonable accommodation process." 29 C.F.R. Pt. 1630, App. § 1630.14(c). This argument fails because DOCS submitted no evidence in the district court to support the conclusion that either the Policy generally or inquiries of Fountain specifically were intended to aid in the accommodation process. This alleged justification for the medical certification requirement appears nowhere in any of the directives or memorandums submitted as evidence, but only in DOCS's appellate briefs. "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir.1996). DOCS's argument that inquiry is permissible in Fountain's case because it needs to receive updated information about her disability is not supported by the record.
 
 
 15
 Besides contending that its inquiries are a legitimate part of the accommodation process, DOCS also relies more generally on the ADA's approval of inquiries to determine "the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). DOCS notes that one purpose of the sick leave Policy is to provide information necessary to ensure that a corrections officer can safely return to work. Therefore, it argues that application of the Policy to Fountain, who testified to her physical limitations, is acceptable because of a legitimate need to verify her ability to perform the sometimes strenuous functions of a corrections officer. But a general diagnosis is not a narrowly tailored inquiry into the employee's ability to carry out her job-related functions. Accordingly, this argument is also unavailing.
 
 
 16
 Finally, DOCS argues that Fountain suffers no injury because even if DOCS's inquiries into Fountain's health result from the broad sick leave policy rather than an appropriately narrow inquiry, they will still reveal no information that DOCS could not obtain through legitimate inquiries. We disagree. Certainly DOCS's broad policy requiring general diagnoses may sometimes reveal information about Fountain's known disabilities that DOCS could obtain through a focused inquiry. But inquiries made pursuant to the Policy could also reveal disabilities of Fountain previously unknown to DOCS.
 
 
 17
 There is no evidence in the record that Fountain has any disabilities other than those already known to DOCS. Therefore, this raises the question whether only those employees with unknown disabilities may challenge an impermissible medical inquiry or examination under the ADA. Other circuit courts have found that a plaintiff need not prove a disability in order to challenge a medical examination or inquiry under 42 U.S.C. § 12112(d). See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1229 (10th Cir.1997); Fredenburg v. Contra Costa County Dep't of Health Servs., 172 F.3d 1176, 1182 (9th Cir.1999); Cossette v. Minnesota Power & Light, 188 F.3d 964, 969-70 (8th Cir.1999); see also Murdock v. Washington, 193 F.3d 510, 512 (7th Cir. 1999) (noting the same in dicta); but cf. Armstrong v. Turner Indus., Inc., 141 F.3d 554, 558-59 (5th Cir.1998) (noting that whether an individual without a disability could challenge a preemployment medical examination or inquiry "involve[d] difficult issues of statutory interpretation," but declining to determine the issue since plaintiff had not demonstrated any injury and therefore lacked standing).
 
 
 18
 We agree with our sister circuits that a plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112(d)(4)(a). In contrast to other parts of the ADA, the statutory language does not refer to qualified individuals with disabilities, but instead merely to "employees." 42 U.S.C. § 12112(d)(4)(A). Moreover, we agree with the Tenth Circuit that "[i]t makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." Roe, 124 F.3d at 1229. We also note that EEOC enforcement guidance supports this interpretation. See Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA), (EEOC, July 27, 2000), available at http://www.eeoc.gov/ docs/guidance-inquiries.html ("This statutory language makes clear that the ADA's restrictions on inquiries and examinations apply to all employees, not just those with disabilities."). Even when they are not formally promulgated as regulations, such agency publications are "at least a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 48 (2d Cir.2002) (internal quotation marks omitted).
 
 
 19
 We conclude that Fountain has sufficiently alleged that she has suffered and will continue to suffer the injury prohibited by the ADA's prohibition against inquiries into disability. She is therefore an appropriate plaintiff to bring this challenge to the Policy under 42 U.S.C. § 12112(d)(4)(A).
 
 
 20
 II. The Policy Falls within the ADA's General Prohibition
 
 
 21
 DOCS contends that requiring medical certification is not an "inquiry" prohibited under 42 U.S.C. § 12112(d)(4)(A). The ADA does not forbid all medical inquiries, but only those "as to whether such employee is an individual with a disability or as to the nature or severity of the disability." Id. DOCS argues that because the Policy only requires a "general" diagnosis, its inquiries are insufficient to reveal whether the employee has a disability. Fountain argues that the Policy falls within the statute, because the inquiries would tend to reveal an employee's disability.
 
 
 22
 A DOCS memorandum described the types of diagnoses that would be acceptable under the Policy:
 
 
 23
 Medical documentation need only to be sufficiently informative as to allow [DOCS] to make a determination concerning the employee's entitlement to leave or to evaluate the need to have an employee examined by [the Employee Health Service] prior to returning to duty. If a doctor's note states that an employee is "under my care", this is not sufficient. However, if a doctor's note, for example, states "recuperating from minor surgery" or "treated for a minor foot injury", this is a sufficient diagnosis.
 
 
 24
 It is clear that even what DOCS refers to as a "general diagnosis" may tend to reveal a disability. We hold that requiring a general diagnosis is sufficient to trigger the protections of the ADA under this provision and that summary judgment in Fountain's favor was appropriate on this element.
 
 
 25
 Few courts have interpreted this provision, but one court has found that a requirement that employees disclose what prescription drugs they use is a prohibited inquiry, since such a policy would reveal disabilities (or perceived disabilities) to employers. See Roe v. Cheyenne Mountain Conference Resort, 920 F.Supp. 1153, 1154-55 (D.Colo.1996), aff'd in pertinent part, 124 F.3d 1221 (10th Cir.1997). Similarly, we believe that since general diagnoses may expose individuals with disabilities to employer stereotypes, the Policy implicates the concerns expressed in these provisions of the ADA.
 
 
 26
 DOCS argues that a diagnosis alone does not provide the essential information necessary to determine if an individual is suffering from a disability. DOCS notes that the EEOC has indicated that a diagnosis is not the equivalent of a disability:
 
 
 27
 The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual. Some impairments may be disabling for particular individuals but not for others, depending on the stage of the disease or disorder, the presence of other impairments that combine to make the impairment disabling or any number of other factors.
 
 
 28
 29 C.F.R. Pt. 1630, App. § 1630.2(j). DOCS also cites Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), where the Supreme Court relied in part on the regulation in emphasizing that the effect of the impairment on the life of the individual, not a particular diagnosis, determines whether a disability exists.
 
 
 29
 In its brief, DOCS omits the sentence in the regulations immediately following the passage it quotes. That sentence indicates that "[o]ther impairments, however, such as HIV infection, are inherently substantially limiting." 29 C.F.R. Pt. 1630, App. § 1630.2(j). This unquoted sentence undercuts DOCS's argument since it confirms that some diagnoses can reveal an impairment which is "inherently substantially limiting." See also Albertson's, 527 U.S. at 566, 119 S.Ct. 2162 (noting that some impairments may invariably cause a substantial limitation of a major life activity); cf. Fountain, 190 F.Supp.2d at 339 (noting that the general diagnosis "received chemotherapy" would cause an employee to divulge a disability or perceived disability). Even where a diagnosis alone is not sufficient to establish that an employee is disabled, the diagnosis may give rise to the perception of a disability, and discrimination on the basis of a perceived disability is also prohibited by the ADA.
 
 
 30
 The EEOC's own definition of a "disability-related inquiry" further undercuts DOCS's argument:
 
 
 31
 
 What is a "disability-related inquiry"? (Question 1)
 
 
 
 32
 A "disability-related inquiry" is a question that is likely to elicit information about a disability, such as asking employees about: whether they have or ever had a disability; the kinds of prescription medications they are taking; and, the results of any genetic tests they have had.
 
 
 33
 Disability-related inquires also include asking an employee's co-worker, family member, or doctor about the employee's disability.
 
 
 34
 Questions that are not likely to elicit information about a disability are always permitted, and they include asking employees about their general well-being; whether they can perform job functions; and about their current illegal use of drugs.
 
 
 35
 See Questions and Answers: Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA), (EEOC, July 27, 2000), available at http://www.eeoc.gov/docs/qanda-inquiries.html (emphasis in original). DOCS's requirement of a general diagnosis is much more akin to the examples of prohibited inquiries than to inquiries into general well-being or ability to perform job functions.
 
 
 36
 III. Genuine Issues of Material Fact Exist as to whether the Policy Is Job-related and Consistent with Business Necessity
 
 
 37
 The ADA creates an exception to generally prohibited inquiries when "such ... inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). DOCS contends that, based on this exception, summary judgment for Fountain was inappropriate and that we should instead grant summary judgment in its favor. We agree that the facts, when viewed in the light most favorable to DOCS, create genuine issues of material fact with respect to the business necessity defense. On the other hand, we do not think that the facts, viewed in the light most favorable to Fountain, can support a grant of summary judgment for DOCS. Therefore, we remand for further discovery and, if necessary, for trial.
 
 A. The business necessity standard
 
 38
 Relatively little case law concerns the proper interpretation of business necessity in this context. Even fewer cases involve generally applicable policies like DOCS's rather than individualized inquiries. Faced with this limited case law, the district court reasoned:
 
 
 39
 [I]n order to fall within the [business necessity] exception ..., the employer must demonstrate some reasonable basis for concluding that the inquiry was necessary. That is, the employer must show that it had some reason for suspecting that the employee, or class of employees, would be unable to perform essential job functions or would pose a danger to the health and safety of the workplace.
 
 
 40
 Fountain, 190 F.Supp.2d at 339. The court concluded that "no reasonable factfinder could conclude that an inquiry triggered by a single day's absence from work is the type of reasonable expectation" that it had described. Id. at 340.
 
 
 41
 We believe that the district court's approach here was generally sound. Nonetheless, because we find that material issues of genuine fact exist, see Part III.B, a remand is necessary to allow the district court to reconsider DOCS's business necessity defense. Because the interpretation of this provision is an issue of first impression in our Court, we will discuss the business necessity standard more fully.
 
 
 42
 The Ninth Circuit has held that the "[t]he business necessity standard is quite high, and is not [to be] confused with mere expediency." Cripe v. City of San Jose, 261 F.3d 877, 890 (9th Cir.2001) (internal quotation marks omitted); see also Tice v. Centre Area Transp. Auth., 247 F.3d 506, 515 (3d Cir.2001) ("an examination that is `job related' and `consistent with business necessity' must, at minimum, be limited to an evaluation of the employee's condition only to the extent necessary under the circumstances to establish the employee's fitness for the work at issue"); Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 811 (6th Cir.1999) ("for an employer's request for an exam to be upheld, there must be significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job").
 
 
 43
 We endorse the views of the Ninth Circuit and hold that in proving a business necessity, an employer must show more than that its inquiry is consistent with "mere expediency." An employer cannot simply demonstrate that an inquiry is convenient or beneficial to its business. Instead, the employer must first show that the asserted "business necessity" is vital to the business. For example, business necessities may include ensuring that the workplace is safe and secure or cutting down on egregious absenteeism. The employer must also show that the examination or inquiry genuinely serves the asserted business necessity and that the request is no broader or more intrusive than necessary. The employer need not show that the examination or inquiry is the only way of achieving a business necessity, but the examination or inquiry must be a reasonably effective method of achieving the employer's goal.
 
 
 44
 The standard that we articulate is consistent with case law that has developed in other courts. Courts have generally addressed these issues in cases where an employer sought an examination from an individual employee, who had particularly severe attendance problems or had previously demonstrated an inability to perform required job functions. See, e.g., Harris, 206 F.3d at 844 (finding no ADA violation when employee refused to rehire plaintiff without a medical release when employee knew that plaintiff had a disability that had previously forced him to resign); Porter v. United States Alumoweld Co., 125 F.3d 243, 246 (4th Cir.1997) (finding consistency with business necessity when employer required a medical exam from employee, whose job required lifting, when employee sought to return from a leave of absence following back surgery for a work-related injury); Riechmann v. Cutler-Hammer, Inc., 183 F.Supp.2d 1292, 1299 (D.Kan.2001) (finding that evidence supported jury's finding that after plaintiff had suffered stroke and now requested transfer to a more strenuous position within the company, requiring extensive questionnaire from employee's doctor served business necessity); Rodriguez v. Loctite Puerto Rico, Inc., 967 F.Supp. 653, 661 (D.P.R.1997) (finding no ADA violation when employer required an independent examination after plaintiff requested a two months leave of absence).
 
 
 45
 The case law on inquiries directed towards individual employees thus demonstrates that courts will readily find a business necessity if an employer can demonstrate that a medical examination or inquiry is necessary to determine 1) whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties (such as frequent absences or a known disability that had previously affected the employee's work) or 2) whether an employee's absence or request for an absence is due to legitimate medical reasons, when the employer has reason to suspect abuse of an attendance policy. These two business necessity justifications are merely illustrative, and an employer may be able to demonstrate other business necessities. For example, here, DOCS has suggested that it must guard against the severe disruption that would result from infectious diseases being spread through the staff or inmate population. On remand, DOCS will have the chance to submit evidence that it has a legitimate and vital need to protect against this occurrence, and that its general diagnosis requirement helps to alleviate the concern.
 
 
 46
 B. Genuine issues of material fact with regards to DOCS's business necessity defense
 
 
 47
 In accordance with the case law, DOCS asserts that requiring medical certification with a general diagnosis after an absence of four or more days is necessary to determine whether the returning employee can safely and securely perform the functions of a corrections officer. DOCS also argues that requiring medical certification from known attendance abusers is necessary to determine whether an employee's absence is due to legitimate medical reasons. We hold that a grant of summary judgment is not appropriate for either Fountain or DOCS.
 
 
 48
 Up to this point, both parties have made only conclusory assertions regarding the benefits or lack thereof of the diagnosis requirement. Therefore, on remand, the district court should permit further discovery. It may be helpful to depose both expert and lay witnesses to testify on issues such as the essential functions of corrections officers and the ability of physicians to understand those functions and to assess whether the corrections officer can safely return to work. Factual development on the efficacy of general diagnoses (as opposed to certification without diagnoses) in improving workplace health and security and in curbing sick leave abuse is particularly necessary. After further discovery, the parties may renew their summary judgment motions. If genuine issues of material fact remain, a trial will be necessary.[1]
 
 
 49
 We note that, given that it was required to draw factual inferences in favor of DOCS, the district court should not have found that "the sick leave policy provides no limitation on the ability of the defendants to ask for medical diagnosis." Fountain, 190 F.Supp.2d at 340. We believe that genuine issues of material fact exist with respect to that issue, since both DOCS's written and informal policies may limit the authorization of medical certification only from those who either are absent four or more days or are attendance abusers.
 
 
 50
 The district court on remand may consider that DOCS has suggested different justifications for the two prongs of its attendance directive. With respect to absences of four days or more, DOCS relies on the business necessity of ensuring that the employee can perform his or her duties effectively without infecting staff or inmates. With respect to attendance abusers, DOCS relies on the business necessity of verifying that absent employees had valid justifications for their absences. We agree that both of these can be valid business necessities under the proper circumstances. It appears that the district court may not have considered DOCS's interest in curbing egregious sick leave abuse. See Fountain, 190 F.Supp.2d at 340 (noting that to fall within the business necessity exception, the policy "must be based upon a reasonable expectation that the inquiry into the protected information would reveal that the employee was unable to perform work related functions or was a danger to the health and safety of the workplace"). Some disability-related inquiries aimed at curbing sick leave abuse may fall within the business necessity exception. The problem here is that DOCS has not offered sufficient evidence to prove either this business necessity or any other.
 
 
 51
 We also note that what constitutes a business necessity will undoubtedly vary in different workplaces. The needs of correctional facilities for secure and adequate staffing are particularly strong, and in other contexts, courts have recognized the special circumstances of such facilities. See, e.g., Sandin v. Conner, 515 U.S. 472, 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (recognizing that generally "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"); Bell v. Wolfish, 441 U.S. 520, 547 n. 29, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("[T]he realities of running a corrections institution are complex and difficult"). An employer like DOCS may be able to prove that a policy is consistent with business necessity in circumstances where other employers would be unable to meet that burden.
 
 
 52
 In addition, we address the different approach that a court should take in addressing a general policy rather than an employer's inquiry or examination of an individual employee. DOCS suggests that the district court held that an employer must justify a medical inquiry in each individual case by demonstrating "some reasonable basis for concluding that the inquiry was necessary." Fountain, 190 F.Supp.2d at 339. DOCS argues that, to the contrary, a general policy of medical inquiry applied to all employees and designed to determine fitness for duty can be job-related and consistent with business necessity even when the employer does not have a reason for suspecting that the individual employee would be unable to perform essential job functions or would pose a threat to the health and safety of the workplace. DOCS somewhat mischaracterizes the district court's analysis, since although the court did seem to require some sort of particularized showing, it did so with respect to "the employee, or class of employees." Id. (emphasis added).
 
 
 53
 DOCS seeks support for its position from a Tenth Circuit case, Martin v. Kansas, 190 F.3d 1120 (10th Cir.1999), overruled on other grounds by Board of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), which approved the employer's use of a disability disclosure form. Id. at 1134. The form, to be completed biannually, asked the employees to "place an `X' after any disability below which presents a substantial barrier to your employment opportunities." Id. at 1124. In order to prove its business necessity justification, the employer relied on a written policy indicating that the "information submitted concerning disabilities or handicaps shall be considered in security post assignments and reasonable accommodation shall be made as necessary." Id. The Tenth Circuit noted that according to EEOC interpretive guidance, the ADA "permits employers... to make inquiries or require medical examinations necessary to the reasonable accommodation process." Id. at 1134 (quoting 29 C.F.R. Pt. 1630, App. § 1630.14(c)). Concluding that plaintiff had "failed to present evidence to rebut the State's written policy that the disclosure request is intended to gather information to be used in setting post assignments and establishing reasonable accommodations, which are job-related purposes that are consistent with business necessity," the Tenth Circuit found in favor of the employer on that point. Id. Under the standard that we set out today, we believe that a court should examine the employer's asserted justification more carefully than the Martin court did in order to determine whether a policy was consistent with business necessity. The Tenth Circuit appears to have shifted the burden back to the plaintiff to rebut the employer's written policy.
 
 
 54
 Despite our doubts about the outcome in Martin, we do not believe that the ADA categorically prohibits an employer from implementing a general policy requiring medical certification with general diagnoses. Nonetheless, we emphasize that the examination of whether a policy actually contributes to the business necessity is vital. DOCS argues that it has met its burden because, like the Martin employer, it has a generally applicable policy designed to achieve business necessity justifications that have been approved in other cases (here, ensuring workplace security and eradicating egregious absenteeism). However, DOCS cannot merely rely on reasons that have been found valid in other cases but must actually show that the general diagnosis requirement contributes to the achievement of those business necessities. The adoption of a generally applicable policy does not allow the employer to escape scrutiny as to whether the policy is consistent with business necessity. We agree with the body of case law holding that a district court must carefully analyze whether an employer's requested inquiry of an individual employee falls within the business necessity exception; we hold today that the court must give equal attention to determining whether an employer's subjection of a particular class of employees to a general policy of inquiry is consistent with business necessity.
 
 
 55
 In defining a class subject to a general policy, the employer must show that it has reasons consistent with business necessity for defining the class in the way that it has. The court should grant some deference to the employer in determining how to define a class subject to a general policy. For example, DOCS requires certification of employees who are absent for four days or more. If DOCS can show that, due in part to its unique staffing requirements, it has a reasonable basis for concluding that such employees as a group pose a genuine health or security risk, and that the general diagnosis requirement allows DOCS to decrease that risk effectively, it can satisfy the business necessity exception. The fact that a policy will require medical certification from some individual employees who do not pose a health or security risk does not undermine the policy if the employer has defined the class of employees reasonably in choosing absences of a certain length.
 
 
 56
 The Policy with respect to attendance abusers may be somewhat more problematic. We believe that factual development as to what criteria DOCS uses to identify a corrections officer as a time and attendance abuser would be particularly helpful to the district court, but we leave the development of that issue to the court's discretion. What little evidence there is in the record on the process of identifying time and attendance abusers raises some concerns. For example, we are somewhat disturbed that DOCS Director of Personnel Joseph A. Murphy sent a memorandum noting:
 
 
 57
 As Commissioner Coughlin has continually stressed [] the intent of this program is not to identify every employee as a "time abuser", it is to identify those who exhibit an attendance problem and provide guidelines in addressing that problem.
 
 
 58
 The fact that such a disclaimer was even necessary may hint that some DOCS administrators may have cast their nets too widely in identifying time and attendance abusers.
 
 
 59
 DOCS leaves a great deal of discretion within the hands of its administrators in implementing the attendance policy. Director of Personnel Murphy writes:
 
 
 60
 There is an ever present possibility when implementing projects of this nature that employees will be caught up in the counseling and disciplinary process without reasonable justification.... I cannot stress strongly enough that [the] attendance control guidelines are called guidelines for a reason. There may be many instances where certain employees should be given more flexibility than others. All will not fit one mold.
 
 
 61
 DOCS's stated goal of "weed[ing] out that small group of employees who consistently maintain attendance records that are far below [DOCS] standards" is probably consistent with business necessity case law. Nonetheless, if the policy ultimately affects a class of so-called attendance abusers that is much larger than "that small group of employees" with truly egregious attendance records, or if the policy is applied inconsistently, DOCS will find it more difficult to prove business necessity.
 
 
 62
 A policy that is "designed to be humane" and to prevent "staff [from being] caught up in this process without reasonable justification" is certainly laudable in the abstract. However, the danger of such a flexible policy is that it could be used to target individuals with actual or perceived disabilities. Accordingly, we believe that factual development as to what criteria DOCS uses to identify a corrections officer as a time and attendance abuser would be particularly helpful to the district court on remand.
 
 CONCLUSION
 
 63
 For the reasons given above, we affirm the judgment of the district court as to Parts I and II above. We vacate the judgment of the district court as to Part III and remand for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Fountain has requested a jury trial in her Complaint. ADA claims, as well as claims involving business necessity in other contexts,see, e.g., Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 408 n. 10, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) (Age Discrimination in Employment Act claim), are generally tried by a jury. However, Fountain is seeking only equitable relief, and therefore, is not entitled to a jury trial under the Seventh Amendment.